In re SWIFT AIRE LINES,
INC., Debtor.

David Y. FARMER, Trustee, Plaintiff,

v.

CROCKER NATIONAL BANK, a National Banking Association, Defendant,

and

Justin Colin, an individual, Intervener.

Bankruptcy No. LA–81–11896(CA).
Adv. No. LA–81–4979(CA).

United States Bankruptcy Court,
C. D. California.

March 25, 1982.

Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for David Y. Farmer, Trustee, plaintiff.

Danning, Gill, Gould & Joseph, Los Angeles, Cal., for Crocker Nat'l Bank, defendant.

Irell & Manella, Los Angeles, Cal., for Justin Colin, intervener.

## MEMORANDUM OF DECISION

CALVIN K. ASHLAND, Bankruptcy Judge.

Justin Colin bought an airline. He invested $1,775,000 in November 1980 to ac-

quire an 80% ownership in Swift Aire Lines, Inc. He agreed to invest an additional $755,000 when such funds became necessary for the continued operation of Swift's business. The availability of the $775,000 was assured by a letter of credit which could be drawn upon if Colin did not fulfill his obligation.

Wells Fargo Bank, N.A. was Swift's principal lender and had a vital interest that the additional funds be provided should they be required. In ordinary circumstances, Swift's board of directors might have been given the power to make the demand and draw on the letter of credit. But, Colin controlled the corporation. It is highly unlikely that he would allow the board of directors to prepare the statement of need necessary to draw on the letter of credit, and equally unlikely that he would invest the $775,000 on demand. Therefore, the right to make demand on Colin and to provide the statements necessary to draw on the letter of credit was given to Wells Fargo.

On January 19, 1981, at the request of Colin, Crocker National Bank issued its letter of credit in favor of Swift in the sum of $775,000. On September 15, 1981 Wells Fargo made formal demand on Colin to advance the promised $775,000. On September 18, 1981 Swift filed this Chapter 7. David Y. Farmer was appointed interim trustee. On October 6, 1981 he demanded payment on the letter of credit. He submitted certain documents including a demand, a statement of need, and a draft which were signed by the trustee and a statement of need signed by Wells Fargo.

On October 8, 1981 Crocker refused to honor the draft on the grounds that:

(1) the draft was not payable at sight and was not signed by the "beneficiary" of the letter of credit;

(2) the signature of the "beneficiary" did not appear on the statement and the signature was not followed by the designation: "Corporate Secretary, Swift Aire Lines, Inc.;"

(3) the trustee had no power to draw on the letter of credit; and

(4) representations made as to the necessity of funds were untrue.

The trustee filed a complaint for wrongful refusal to honor letter of credit on October 19, 1981. Subsequently, the defendant Crocker filed a motion to dismiss the complaint on the grounds of failure to state a claim upon which relief can be granted. This motion was denied after a hearing on November 25, 1981.

The basis of the motion was that the letter of credit was an executory contract to make a loan or extend financial accommodations to or for the benefit of the debtor which could be terminated under Bankruptcy Code § 365(e)(2). I concluded that that credit had been extended to Colin, not to Swift (the debtor). The letter of credit is a contract between the issuer (Crocker) and its customer (Colin) in which Swift was the beneficiary. The credit or financial accommodation was extended from Crocker to Colin. Section 365(e)(2) did not apply as between Crocker and Swift. Colin himself gave Wells Fargo a letter waiving the provisions of § 365(e)(2)(B).

Crocker filed a third-party complaint for money against Colin on December 3, 1981. Colin filed a cross-complaint against the trustee for conspiracy, fraud, negligent misrepresentation, abuse of process, constructive trust, and declaration of rights based on the underlying transaction between Colin and Swift. Colin and Crocker each made a demand for a jury trial.

A motion to strike the third party complaint against Colin was granted thus rendering the cross-complaint of Colin against the trustee moot. A motion to strike the remaining demand for jury trial was granted. Colin was granted leave to intervene so long as such intervention did not delay trial. Colin was deemed to have adopted the answer filed by Crocker.

Crocker filed a motion for summary judgment contending that the documents tendered by the trustee for payment on the letter of credit were defective on their face thus relieving it of the obligation to pay.

The trustee filed an opposition and a cross-motion for partial summary judgment asserting that the tendered documents were sufficient to require payment. If granted, the trustee's motion would leave only Crocker's affirmative defense of fraud to be tried.

Crocker's refusal to honor the letter of credit rests on three basic grounds. The first two allege that the documents were a nonconforming tender in that they were not executed by the debtor and that the draft was not a sight draft. As a third ground, Crocker alleges that there was an inconsistency apparent on the face of the documents.

Crocker refused to recognize the trustee in bankruptcy as beneficiary under the terms of the letter of credit. They argue that the beneficiary is Swift Aire Lines, Inc., that strict conformity with the terms of the letter of credit is the proper rule of law and, therefore, that a tender of documents executed by the trustee may be rejected.

■ Crocker correctly states that strict compliance with the terms of the demand is a traditional principle of letter of credit law. *Corporacion De Mercadeo Agricola v. Mellon Bank*, 608 F.2d 43 (2nd Cir. 1979); *Far Eastern Textile, Ltd. v. City National Bank and Trustee Co.*, 430 F.Supp. 193 (S.D. Ohio 1977); *Crocker First National Bank v. De Sousa*, 27 F.2d 462 (9th Cir. 1928). However, these cases are not dispositive of the present dispute. None deal with letters of credit in the context of a bankruptcy of one of the parties.

■ Whatever the state law of letters of credit may be, it does not function in a vacuum of commercial credit rights. When the debtor filed for relief in the federal bankruptcy court, the jurisdiction and applicable law governing the debtor automatically expanded to include the federal law of bankruptcy. Where there is conflict, the federal scheme governs. *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *In re Cohn*, 7 B.R. 223 (1980); *In re Gunder*, 8 B.R. 390 (1980).

■ The commencement of this bankruptcy case created an estate which includes, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The rights under the letter of credit are a part of this debtor's estate and may not be denied merely because the debtor filed a petition in bankruptcy. 11 U.S.C. § 541(c)(1). See H.R. Rep.No.595, 95th Cong., 1st Sess. 369 (1977); See S.Rep.No.989, 95th Cong., 2nd Sess. 83 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. After the petition was filed, the debtor was no longer the proper entity to act upon the rights under the letter of credit. The trustee was appointed in accordance with federal statute and is the lawful successor to the debtor in all matters involving the debtor's estate. 11 U.S.C. §§ 701 et seq. Refusal to recognize the trustee in bankruptcy as the legal successor and beneficiary on the letter of credit would only "elevate form over substance." *American Bell International v. Islamic Republic of Iran*, 474 F.Supp. 420, 424 (1979).

In *American Bell*, the letter of credit was issued in favor of the Imperial Government of Iran—Ministry of War. Thereafter, Iran was "wrecked with revolutionary turmoil culminating in the overthrow of the Iranian government and its replacement by the Islamic Republic," at 422. As legal successor, the Islamic Republic was permitted to demand payment even though the terms of the letter only provided payment to the Islamic Republic's predecessor.

■ As a second allegation of non-conformity, Crocker alleges that the draft presented for payment was not a sight draft. The letter of credit requires a "draft at sight." This language is ambiguous. It does not state whether the draft must contain these words on its face or whether it is sufficient that the draft be in a form that may be paid at sight.

"Sight draft" is not a defined term in the Uniform Commercial Code nor is there any indication that a so-called "sight draft" bestows upon its parties any exclusive bundle

of rights. The same is true of instruments, like the one presented in this case, in which no time for payment is stated. However, the Uniform Commercial Code does give these two kinds of instruments a common characteristic. Section 3–108 states that each is to be treated as payable on demand. See also, B. Clark, *The Law of Bank Deposits, Collections and Credit Cards,* at 7–2 (1981), in which a draft payable on sight or demand is distinguished from a draft payable at some time after acceptance.

The draft presented in this case is entitled to the same treatment as a draft which says it is a sight draft. Crocker has not advanced any substantive reason or need for relying on a formalistic designation on the face of the draft. The letter of credit itself does not clearly require such formalism. There appears to be no ground for asserting that the draft presented in this case is not a sight draft.

█ Crocker's third basic objection to the tender of documents rests on a supposed inconsistency between a liquidation proceeding in bankruptcy and "continuing operations." Under the terms of the letter of credit, Crocker required and was given a statement from Wells Fargo which included the following: "Wells Fargo Bank, N.A. has determined that said funds are required by Swift Aire Lines, Inc. for continued operation of its business ..." In addition, other documents were tendered which indicated that David Y. Farmer had been appointed "Trustee in Bankruptcy for Swift Aire Lines, Inc."

It is not clear anywhere on the face of the documents that this bankruptcy proceeding is a Chapter 7 liquidation. Even so, to conclude that a liquidation proceeding is even facially inconsistent with "continuing operations" requires speculation on the underlying factual situation. The debtor may or may not be liquidated in the final analysis. Section 706(a) gives the debtor an absolute, unwaivable right to convert the case to a Chapter 11. A party in interest can cause the case to be converted to a Chapter 11 at any time after notice and a hearing if the court finds that the decision to convert will most inure to the benefit of all parties in interest. 11 U.S.C. 706(b). Section 721 allows the court to authorize the trustee to operate the business of the debtor. Section 704(7) charges the trustee with the duty to file certain reports on the continued business. There is no absolute inconsistency in the documents presented to Crocker for payment.

Furthermore, the letter of credit does not require Wells Fargo or the beneficiary to document the status of the business. The truth of the underlying situation is not an issue in this transaction. The letter of credit requires Wells Fargo to make certain representations if the letter of credit is to be paid. If these representations breach the agreements between Wells Fargo and Colin, or Colin and Swift, or Wells Fargo and Swift, that is another question involving rights under a different contract than the one in question here. .

The authority of the trustee to act in regard to property of the estate during the tenure of his appointment is implicit in his designation as trustee in bankruptcy. Once this identity was established on the face of the papers, there was no need to probe the underlying factual situation or to speculate about the outcome of the case. This kind of speculation, beyond the four corners of the document, is not a proper inquiry in which the issuer should indulge. Cal.Comm.Code § 5114(1).

The purpose of commercial letters of credit is to promote transactions by providing assurance of payment at some future date upon the presentation of documents. This is accomplished by isolating the various contractual relationships between the three parties involved in the transaction.

For the purpose of these summary judgment motions, the contract between Colin and Swift Aire is not at issue. The contract between Colin and Crocker is not at issue. These parties may have rights against each other but they will be decided in another context.

The question here is whether Crocker should have honored its contract to pay

money on the presentation of certain documents. The requisite documents were presented. The operative document was the statement of need from Wells Fargo. Crocker's objection to the form of the draft is without merit. Crocker's refusal to recognize the trustee in bankruptcy as the proper legal entity to act for this corporate debtor is in violation of federal law. Crocker's supposition that the appointment of a trustee in bankruptcy is incompatible with continuing operations of the debtor involves improper speculation beyond the scope of its contract to pay on presentation of certain documents. The authority to pay was on the face of the documents actually presented.

For the foregoing reasons and particularly because he was performing his statutory duty, there was no fraud on the part of the trustee. I am not persuaded otherwise by the testimony.

This memorandum of decision shall constitute findings of fact and conclusions of law pursuant to Local Bankruptcy Rule 752. The attorney for the trustee should lodge an appropriate order.