In re SWIFT AIRE LINES, INC., Debtor.

David Y. FARMER, as Trustee, Plaintiff-Appellee,

v.

CROCKER NATIONAL BANK, a national banking association, Defendant-Appellant,

and

Justin Colin, an Individual, Intervenor-Appellant.

BAP Nos. CC–82–1139VGK, CC–82–1149VGK.

Bankruptcy No. LA–81–11896CA. Adv. No. LA–81–4979CA.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Oct. 14, 1982.

Decided March 15, 1983.

David A. Gill (argued), Howard Kollitz, Danning, Gill, Gould, Joseph & Diamond, Los Angeles, Cal., for defendant-appellant.

David J. McCarty (argued), Merrill R. Francis, Sheppard, Mullin, Richter & Hampton, Louise A. LaMothe, Irell & Manella, Los Angeles, Cal., for plaintiff-appellee.

Before VOLINN, GEORGE and KATZ, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### I. FACTS

Prior to filing bankruptcy on September 18, 1981, Swift Aire Lines, Inc., operated a commercial airline service. Business operations were financed primarily through Wells Fargo Bank.

In November, 1980, appellant, Justin Colin, purchased an 80% stock ownership interest in the debtor for $1,775,000. Colin also agreed in a separate investment agreement dated November 19, 1980, to contribute an additional $775,000 to Swift by loan or purchase of stock. The additional contribution was to be made "in the event that either Wells Fargo Bank, N.A. ... or the Board of Directors of Swift determines in good faith, that such funds are required by Swift for the continuing operation of its business...." Colin was to deliver to Swift a bank letter of credit in the amount of $775,000 to secure payment of the additional contribution to the debtor, in the event such payment was required.

Colin applied for a letter of credit from appellant, Crocker National Bank. On January 19, 1981, Crocker issued an irrevocable letter of credit for $775,000 with Swift as beneficiary. The Board of Directors of Swift and Wells Fargo[1] were each given the power to draw on the letter of credit.

Colin also signed and sent a letter dated January 20, 1981, to an officer of Wells Fargo stating that Colin agreed that the debtor could draw on the Crocker letter of credit even if Swift filed a petition under any chapter of bankruptcy, and that the provisions of 11 U.S.C. § 365(e)(2)(B) were waived and would not be asserted by Colin in any attempt by Swift to draw on the letter of credit.

As a condition to Swift or Wells Fargo being able to draw on it, the Crocker letter of credit required a statement that Wells Fargo or Swift had demanded payment of the additional contribution and that such amount remained unpaid for a period of five days. On September 15, 1981, Wells Fargo made formal demand on Colin to make the additional contribution to the debtor.

Prior to expiration of the five days, on September 18, 1981, Swift filed a petition under 11 U.S.C. Chapter 7. Three days later, the appellee, David Y. Farmer was appointed interim trustee.

On October 6, 1981, the trustee presented certain documents to Crocker in an attempt to draw against the letter of credit. The documents included the following:

---

1. The Board of Directors, being controlled by Colin, might have been reluctant to draw on the letter of credit. As a result, Wells Fargo as the principal lender of the debtor desired an independent right to draw on the letter of credit on Swift's behalf. A copy of the subject letter of credit is attached to this opinion because of its importance.

1) A draft to Crocker to pay to the order of the trustee for the debtor the amount of $775,000.

2) A letter from the trustee to Crocker demanding payment of the draft pursuant to the letter of credit.

3) A letter from the trustee to Crocker stating that Wells Fargo had requested "that a drawing be made" under the letter of credit.

4) A letter from Wells Fargo to Crocker requesting that $775,000 be drawn under the letter of credit. The letter stated that Colin failed to pay said amount within five days after demand and that the funds were necessary for continued operation of the business of the debtor.

5) A letter from Wells Fargo to the trustee with the same content as document 4) above.

6) A copy of the agreement which required Colin to make the additional contribution and provide the letter of credit.

7) A copy of the letter from Colin to Wells Fargo waiving Swift's bankruptcy as a defense to payment under the letter of credit.

8) A copy of the letter whereby Wells Fargo made demand on Colin to make the original contribution.

9) A copy of the notice of the trustee's appointment and a copy of the trustee's oath.

On October 7, 1981, Crocker refused to honor the documents submitted by the trustee. The reasons were as follows:

1) The draft was not drawn by the beneficiary of the letter of credit and was not payable at sight, as required by the letter of credit.

2) The letter of credit required a statement from Wells Fargo which must be manually signed by the beneficiary and followed by the designation "Corporate Secretary, Swift Aire Lines, Inc." This requirement was not met.

3) The letter of credit required a statement from Wells Fargo that the "funds are required by Swift Aire Lines, Inc. for the continued operation of its business . . ." Crocker contended that this statement was false at the time the documents were presented and, therefore, such presentment was defective.

4) The trustee did not have the power to draw under the letter of credit. 11 U.S.C. § 365(c) was cited as an example.[2]

On October 19, 1981, the trustee filed a complaint against Crocker in the bankruptcy court for wrongful refusal to honor the letter of credit. On December 3, 1981, Crocker filed a third-party complaint against Colin for indemnification in the event that the trustee prevailed. On January 5, 1982, Colin filed a cross-complaint against the trustee for conspiracy, fraud, negligent misrepresentation, abuse of process, constructive trust, and declaration of rights based on the underlying transaction between Colin and the debtor. Crocker and Colin each demanded a trial by jury.

On December 21, 1981, the court set January 27, 1982, as a trial date. Prior to trial, the trustee moved to strike the demand for a jury trial. These motions were granted orally by the court after hearing on January 12, 1982. At that time, Colin was orally granted leave to intervene as a party defendant and he was deemed to have adopted the answer filed by Crocker. The court's oral determinations were reduced to writing on January 26, 1982.

On January 8, 1982, Crocker filed a motion for summary judgment on the basis that the trustee failed to tender the requisite documents as a matter of law to draw against the letter of credit. On January 15, 1982, the trustee filed a cross-motion for partial summary judgment on the basis that the trustee tendered sufficient documents as a matter of law to draw against the letter of credit. The summary judgment motion of the trustee was partial because Crocker had asserted that statements made by the trustee in the tendered documents were fraudulent which Crocker asserted would relieve it of honoring the attempted

---

2. This was presumably a reference to 11 U.S.C. § 365(c)(2) which prevents assumption of an executory contract for a financial accommodation to or for the benefit of the debtor.

draw on the letter of credit under Cal. Comm.Code § 5114(1). The allegations of fraud could not be decided on summary judgment.

A hearing on the summary judgment motions was held on January 25, 1982. The court orally denied Crocker's motion for summary judgment and granted the trustee's motion for partial summary judgment. Trial of the issue of the trustee's fraud was commenced on January 27, 1982. The proceedings were continued to and concluded on February 25, 1982.

Crocker requested that the trial date be reset on three separate occasions, stating that it had insufficient time to complete discovery and prepare for trial. The court denied Crocker's requests.

On March 25, 1982, the trial court filed its memorandum of decision[3] stating that the trustee had filed the necessary documents to draw against the letter of credit and that there was no fraud by the trustee. On April 7, 1982, the court entered a corresponding money judgment against Crocker in favor of the trustee for $775,000 principal plus interest and costs. Crocker and Colin appeal this judgment.

## II. PROCEDURAL RULINGS

### THIRD PARTY COMPLAINT

Crocker argues that the trial court abused its discretion in striking the third party complaint against Colin. Crocker argues that it has been prejudiced by such action because Colin filed a petition in bankruptcy under 11 U.S.C. Chapter 11 subsequent to perfection of this appeal.

The record before us does not reveal any evidence that Colin intended to file a petition in bankruptcy at the time that the trial court struck the third party complaint. There is simply no evidence of prejudice at the time the order in question was entered.

Further, the mere filing of a petition in bankruptcy has not been shown to be of prejudice to Crocker. Crocker has not shown to this court or the court below that the mere filing of a Chapter 11 will result in loss to it.

■ On the record we do not perceive an abuse of the court's discretion in striking the third party complaint.

### DISCOVERY

Crocker asserts that the trial court abused its discretion by commencing the trial in this case prior to completion of Crocker's discovery. This adversary proceeding was commenced on October 9, 1981. Trial commenced on January 25, 1982, and some discovery was allowed to take place between January 25, 1982 and the completion of trial on February 25, 1982. Crocker contends that the discovery time allowed was not appropriate in light of the amount of money involved in this proceeding and the complexity of the circumstances.

■ The standard of review on appeal is whether the trial judge abused his discretion in regulating the discovery process. Wright and Miller, 8 *Federal Practice and Procedure* § 2006 states that:

"In granting discovery, the trial court is vested with broad discretion and will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280 (9th Cir.1977).

Commencing a trial in a case involving more than $775,000 and which has been pending less than four months does not necessarily indicate that an abuse of discretion has taken place with respect to the complaining party. From the evidence before us we are not convinced that the trial court abused its discretion in regulating discovery.

### III. SUMMARY JUDGMENT

### LETTERS OF CREDIT

Generally three parties are involved with a letter of credit: the applicant or customer, the issuer, and the beneficiary. Normal-

---

**3.** *In re Swift Aire Lines, Inc.,* 20 B.R. 286 (Bkrtcy.C.D.Cal.1982).

ly, the applicant engages the issuer to pay a sum of money to the beneficiary when the beneficiary tenders certain documents, specified in the letter of credit, to the issuer. Letters of credit are used primarily to insure or support an underlying agreement by the applicant to pay money to the beneficiary. Nevertheless, the issuer's obligation to pay the beneficiary is not dependent on the underlying agreement between the applicant and the beneficiary. The issuer is only concerned with the documents tendered. If the issuer considers that the tendered documents appear on their face to not be in accordance with the terms and conditions of the letter of credit, the issuer must determine on the basis of the *documents alone* that compliance has not been effected. *Uniform Customs and Practices for Documentary Credits,* International Chamber of Commerce, Publication No. 290 (1974 rev. ed.)[4] When the necessary documents are tendered by the beneficiary to the issuer, the issuer is obligated to pay the beneficiary.[5]

■ Thus, in normal commercial settings, the beneficiary will prevail in an action for wrongful dishonor of documents tendered against a letter of credit only if such documents strictly comply with the terms of the letter of credit. *Board of Trade of San Francisco v. Swiss Credit Bank,* 597 F.2d 146 (9th Cir.1979). Crocker argues that the trial court erred as a matter of law in concluding that the documents tendered by the trustee strictly complied with the terms of the letter of credit.

## DRAFT/S AT SIGHT

The letter of credit requires that "draft/s at sight" be presented at the time demand is made under the letter of credit. The trial court determined that this language was ambiguous as to "whether the draft must contain these words on its face or whether it is sufficient that the draft be in a form that may be paid at sight." The court concluded that the "draft presented in this case is entitled to the same treatment as a draft which says it is a sight draft."

The primary argument of Crocker is that the draft presented failed to include the term "draft at sight". We are not persuaded that these words must be included in the draft to make a proper tender of documents against the letter of credit. The letter of credit only requires that a draft functionally payable at sight be included with the presentment documents. The draft tendered by the trustee is directed to Crocker to pay to the trustee $775,000 and refers to the subject letter of credit.

The California Commercial Code does not define the terms sight drafts or drafts at sight. California Commercial Code § 3108 does provide that instruments payable at sight or on presentation and those in which no time for payment is stated are instruments payable upon demand.

■ Black's Law Dictionary, 5th Edition, states that a sight draft is "[o]ne which is payable on presentation or demand." It would appear that for drafts to be "drafts at sight" they need not necessarily contain the specific words "draft" and "sight" as long as the draft is payable on presentation or demand. *See also,* Clark, *The Law of Bank Deposits, Collections and Credit Cards* ¶ 7.1[1] ("A sight draft is payable on demand . . .") The draft tendered by the trustee meets this standard. We agree with the trial court that "Crocker has not advanced any substantive reason or need for relying on a formalistic designation on the face of the draft." 20 B.R. at 289.

## TRUSTEE AS BENEFICIARY AND POWER TO SIGN IN LIEU OF CORPORATE SECRETARY

### A.

There were two alternative means of drawing on the subject letter of credit.

**4.** The letter of credit was made subject to these standards.

**5.** *See* California Commercial Code § 5114.

The first alternative required a statement from Swift that the additional contribution funds which Colin had agreed to pay remained unpaid five days following demand by Swift and that the Board of Directors of Swift has determined that such funds are required for the continued operation of the business. Such statement not appearing in the record, only the second alternative remained whereby the trustee might meet the requirements for drawing on the letter of credit.

The second alternative required a statement from Swift that Wells Fargo requested that a drawing of the additional contribution be made under the investment agreement. This statement was to be signed by the corporate secretary of Swift. This alternative also required a statement from Wells Fargo that the additional contribution which Colin had agreed to pay under the investment agreement remained unpaid five days following demand by Wells Fargo, and that Wells Fargo had determined that the funds were necessary for continued operation of Swift's business.

### B.

Upon the filing of a bankruptcy petition under Chapter 7, the debtor's estate became the successor to certain legal and equitable property interests of Swift. The trustee became the representative of the estate with the power to deal with its property for the benefit the estate. The bankruptcy estate of Swift is, represented by the trustee, a new legal entity distinct from the debtor Swift Aire Lines, Inc. E.g., 11 U.S.C. §§ 323, 363, 541, 704, and 721.

Swift's officers and directors have no power or authority to deal with the estate, its assets or its affairs. The trustee, only, is empowered to dispose of business assets, and when appropriate authority is obtained, to operate the business. By filing bankruptcy, Swift has made it impossible for Wells Fargo or Swift to draw against the letter of credit. Since there is no longer a corporate secretary able to act for the debt-or, the statement required by the letter of credit cannot be signed by the designated individual.

The trial court has determined that the trustee is entitled to draw on the letter of credit because: 1) Bankruptcy law controls over applicable conflicting state law, and 2) that Crocker's refusal to recognize the trustee as legal successor and beneficiary on the letter of credit would only elevate form over substance, citing *American Bell International v. Islamic Republic of Iran,* 474 F.Supp. 420, 424 (S.D.N.Y.1979).

We are unable to perceive the conflict of law alluded to by the court below. Assuming the letter of credit became property of the estate, the Bankruptcy Code did not give the trustee the power to automatically enforce payment thereunder if state law requiring strict compliance of tender documents would dictate otherwise.

The trial court's determination that Crocker's refusal to recognize the trustee as beneficiary would only elevate form over substance, is at odds with the doctrine of strict compliance. *American Bell* is clearly distinguishable from the case at bar and turns on principles of international law. In that case, presentation of a document from the Imperial Government of Iran, Ministry of War was required to draw against a letter of credit. Demand on the letter of credit was made after the Imperial Government was overthrown by the Islamic Republic of Iran, the actual presentation of documents being made by and in the name of the Islamic Republic. In allowing demand against the letter of credit, the court held that:

> "... American courts have traditionally viewed contract rights as vesting not in any particular government but in the state of which that government is an agent." 174 F.Supp. at 423.

In the domestic arena, American courts have traditionally viewed such rights under this type of transaction to vest in the named beneficiary alone.

496

■ Pursuant to the principle of strict compliance, the trustee failed to, and was precluded from, presenting documents conforming to the requirements of the letter of credit. As a result, Crocker's dishonor of the trustee's demand to draw on the letter of credit was justified.

Rules relating to the treatment of documents, such as letters of credit, providing for payments of funds in a complex commercial transaction have developed from a long history of pragmatic experience. This experience has shown the need for specificity in the conditions for payment and a corresponding need for absolute compliance with these specific conditions. In this manner the customer, issuer, and beneficiary will have no doubts where they stand. The facts here illustrate the reason for this rule.

Without the strict compliance doctrine, Crocker would have been in a dilemma as to where to draw the line between wrongfully honoring the letter of credit which could have precluded Crocker from recourse against Colin, or wrongfully dishonoring the documents tendered by the trustee and the resulting liability to the trustee. The strict compliance doctrine gives the issuer the necessary accuracy in determining whether to honor or dishonor the tendered documents. The trustee has tendered documents to draw against the letter of credit deriving from questionable authority and accuracy, which justify Crocker's dishonor.

EXECUTORY CONTRACT/FINANCIAL ACCOMMODATION

11 U.S.C. § 365(c)(2) provides:

"The trustee may not assume or assign an executory contract . . . of the debtor . . . if . . . such contract is a contract to make a loan, or extend other debt financing or financial accommodation, to or for the benefit of the debtor . . ."

Crocker argues that the court below erred by rejecting the argument that the letter of credit was an executory contract to make a financial accommodation to and for the benefit of the Swift estate. We agree.

While, the terms "executory contract" and "financial accommodation" are not defined in the Bankruptcy Code, the legislative history of 11 U.S.C. § 365(c) is pertinent. It states that:

". . . [T]he section permits the trustee to continue to use and pay for property already advanced, but is not designed to permit the trustee to demand new loans or additional transfers of property under lease commitments.

*Thus, under the provision, contracts such as* loan commitments and *letters of credit are* non-assignable, and *may not be assumed by the trustee."* House Report No. 95–595, 95th Cong., 1st Sess. 348 (1977), Senate Report No. 95–989, 95th Cong., 2nd Sess. 59 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6304 (emphasis added).

■ The drafters of the Bankruptcy Code considered that letters of credit were executory contracts to make a financial accommodation to or for the benefit of the debtor. This would appear to be dispositive unless there are countervailing reasons to hold otherwise. We have examined appellee's arguments and conclude, in view of the specificity of the legislative history and the statement of policy against enforcing financial loans or accommodations, that § 365(c)(2) precludes enforcement of this letter of credit.[6]

The trustee argues that the letter agreement dated January 20, 1981, whereby Colin agreed in favor of Wells Fargo that the "letter of credit may be drawn upon by Swift notwithstanding that Swift may be in any type of proceeding under Title 11 of the United States Code—Bankruptcy; . . ." precludes Crocker from objecting to the documents tendered by the trustee. We disagree. The issuing party under a letter

---

**6.** It should be noted that if Crocker was required to pay the trustee on the letter of credit, Colin would have been entitled to a loan from or stock of the debtor which would have been of questionable value. 11 U.S.C. § 365(c)(2) would appear to be available to prevent this.

of credit is not concerned with or bound by any underlying contract. This January 20, 1981 letter agreement appears to be an underlying contract which does not bind Crocker. Crocker's only obligation was to determine whether the tendered documents strictly complied with the letter of credit.

## FRAUD AND JURY TRIAL

In light of our foregoing ruling, we feel it is unnecessary to review the trial court's finding that the trustee did not act fraudulently in tendering documents to draw against the letter of credit.

It is also unnecessary to review the trial court's decision not to grant Crocker and Colin a jury trial.

## IV. CONCLUSION

Pursuant to the doctrine of strict compliance and the inability of the trustee to assume the letter of credit, we reverse the decisions of the court below denying Crocker's motion for summary judgment and granting the trustee's motion for partial summary judgment. The case is remanded to the trial court to enter judgment consistent with this Opinion.

# CROCKER NATIONAL BANK

INTERNATIONAL DIVISION

**DATE** January 19, 1951

☐ P·O· BOX 36010
SAN FRANCISCO, CALIFORNIA 94138

☒ P·O· BOX 2861
LOS ANGELES, CALIFORNIA 90051

**Delivered to B. O'Neil**
☒☒ X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶M̶L̶.

☐ FURTHER TO OUR PRELIMINARY
CABLE OF TODAY.

☐ IN CONFIRMATION OF OUR FULL DETAIL CABLE OF TODA

| IRREVOCABLE DOCUMENTARY CREDIT | ISSUING BANK'S NO. 700354 | ADVISING BANK'S NO. |
|---|---|---|

| ADVISING BANK | APPLICANT Justin Colin 120 Broadway New York, New York |
|---|---|

| BENEFICIARY Swift Aire Lines, Incl P.O. Box W San Luis Obispo Airport San Luis Obispo, California 92406 | AMOUNT US$775,000.00 (Seven Hundred Seventy Five Thousand and No/100 U.S. Dollars) |
|---|---|
| | EXPIRES ON, December 31, 1983 EXPIRES IN at this office |

**GENTLEMEN;**

'WE HEREBY ESTABLISH OUR IRREVOCABLE LETTER OF CREDIT IN YOUR FAVOR, AVAILABLE BY YOU

DRAFT/S AT * * * * * * * * * * * * * * * SIGHT FOR X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶ INVOICE VALUE DRAWN ON CROCKER NATIONAL BANK
Los Angeles, CALIFORNIA, ACCOMPANIED BY THE FOLLOWING DOCUMENTS·

A) Your signed and dated statement as follows:
"Swift Aire Lines, Inc. hereby certifies that the amount drawn under Crocker National
Bank Letter of Credit No. 700354 represents monies owing by Justin Colin to Swift Aire
Lines, Inc. under Article 1 Section 1.4 of that certain Investment Agreement dated
November 19, 1980 between Justin Colin and Swift Aire Lines, Inc. as amended. Said
amount remained unpaid 5 days following demand thereof made by the Undersigned on
Justin Colin. The Board of Directors of Swift Aire Lines has determined that such
funds are required by Swift Aire Lines Inc. for continued operation of its business". ·

Said statement must be manually signed and said signature must be followed by the
designation "Corporate Secretary, Swift Aire Lines, Inc."

OR ALTERNATIVELY:

B) 1. Your signed and dated statement as follows:

"Wells Fargo Bank, N.A. has requested that a drawing be made under Crocker National
Bank Letter of Credit No. 700354 pursuant to Article I Section 1.4, of that certain
Investment Agreement dated November 19, 1980 between Justin Colin and Swift Aire
Lines, Inc."

Said statement must be manually signed and said statement must be followed by the
designation "Corporate Secretary, Swift Aire Lines, Inc." ·

**please refer to page two which forms an integral part of this Letter of Credit.**

| X̶X̶X̶X̶X̶X̶X̶ STATEMENT FROM; X̶X̶. | X̶X̶RIFAX̶ SHIPMENT | X̶X̶X̶ SHIPMENT |
|---|---|---|

**SPECIAL CONDITIONS**
Partial drawings permitted.
We hereby engage with you that drafts drawn under and in compliance with the terms of this
credit will be duly honored on presentation to us.

DRAFTS MUST INDICATE THE NUMBER AND DATE OF THIS LETTER OF CREDIT.

X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶
X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶
X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶
X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶.

THE AMOUNT OF EACH DRAFT NEGOTIATED UNDER THIS CREDIT MUST
BE ENDORSED ON THE REVERSE SIDE HEREOF, AND THE PRESENTATION
OF ANY SUCH DRAFT SHALL BE A WARRANTY BY THE NEGOTIATING BANK
THAT SUCH ENDORSEMENT HAS BEEN MADE.
THIS CREDIT IS SUBJECT TO THE UNIFORM CUSTOMS AND PRACTICE FOR
DOCUMENTARY CREDITS (1974 REVISION), INTERNATIONAL CHAMBER
OF COMMERCE, PUBLICATION NO. 290.
X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶
X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶.

**CROCKER NATIONAL BANK**

_____
AUTHORIZED SIGNATURE

/dv SECOND SIGNATURE NOT REQUIRED
_____
AUTHORIZED SIGNATURE

16-010 (Rev 10-75)

**ADVISING BANK'S NOTIFICATION**

PLACE, DATE, NAME AND SIGNATURE OF ADVISING BANK

**CROCKER NATIONAL BANK**

International Banking Department

L/C No. 700354
Page 2

AND

B) 2. A signed and dated statement from Wells Fargo Bank N.A. as follows:

"Wells Fargo Bank N.A. hereby requests that an amount be drawn under
Crocker National Bank Letter of Credit No. 700354 covering monies owing
by Justin Colin to Swift Aire Lines Inc. under Article I Section 1.4 of
that certain Investment Agreement dated November 19, 1980 between Justin
Colin and Swift Aire Lines Inc. Said amount remained unpaid 5 days
following demand therefor made by Wells Fargo Bank N.A. on Justin Colin.
Wells Fargo Bank, N.A. has determined that said funds are required by
Swift Aire Lines, Inc. for continued operation of its business, since
Swift Aire Lines, Inc. is either in default in the payment of amounts due
under, or, is not in compliance with a material provision of an agreement
or other obligation to which Swift is a party".

Said statement must further indicate an amount in U.S. Dollars preceded by
the words "The amount requested to be drawn under Crocker National Bank Letter
of Credit No. 700354 is ----".

It is a condition of this Letter of Credit that it shall be automatically extended
without amendment for additional period(s) of one year each from the current or any
future expiration date, unless 30 or more days prior to any such expiration Crocker
National Bank shall have notified you by registered mail to the above address that
Crocker National Bank elected not to consider the letter of credit extended for such
additional period. It is a further condition of this letter of credit that you may,
during the last thirty days of the then current validity period draw under the letter
of credit by means of your sight draft on Crocker National Bank for an amount up to
the available balance accompanied by your signed statement certifying that you
received from Crocker National Bank an advice that we elected not to consider the
expiration date of the letter of credit extended.

AUTHORIZED SIGNATURE

/dv