### In re UNITED PRESS INTERNATIONAL, INC., Debtor.

**Bankruptcy No. 85–00257.**

United States Bankruptcy Court, District of Columbia.

July 30, 1985.

Francis P. Dicello, Washington, D.C., for debtor.

Lawrence R. Metsch, Hauser & Metsch, P.A., Miami, Fla., for Forte Properties, Inc.

## OPINION AND ORDER

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

On June 24, 1985, United Press International, Inc. (the "Debtor"), submitted an application to assume a non-residential real estate lease pursuant to section 365 of Title 11, United States Code ("Bankruptcy Code"). The real estate lease, dated March 4, 1985, covers office space in a building located at 2100 Coral Way, Miami, Dade County, Florida. Forte Properties, Inc. ("Forte Properties"), the lessor under the lease, opposes the Debtor's application on the ground that the lease obligates it to extend a "financial accommodation" to the Debtor. Under section 365(c)(2) of the

Bankruptcy Code, the extension of a "financial accommodation" renders a lease non-assumable by the Debtor. 11 U.S.C. § 365(c)(2). Based on the testimony heard by this Court on June 25 and 28, 1985, and the legal memoranda submitted by the parties on the "financial accommodation" issue, this Court will grant the Debtor's application to assume the real estate lease at issue, for the following reasons.

Under the lease agreement the Debtor must pay monthly rent of $2,933.33, plus certain variable charges, from the date of occupancy through March 31, 1995. The Debtor has paid a security deposit of $6,600 to Forte Properties, and is not obligated to make any further payments until it occupies the premises. The lease requires Forte Properties, at its own expense, to prepare the office space at issue in its new building according to the office needs of the Debtor.[1] At present, Forte Properties has not satisfied this obligation. In fact, Forte Properties has started preparation work on the same office space so as to satisfy the needs of another lessee, to whom it now desires to lease the subject property in place of the Debtor.[2] Thus, the Debtor has complied in every respect with the lease terms, and awaits completion of the preparation work before occupying the premises.

The oral testimony by Arthur Bucknell, Vice-President of the Debtor, on June 25, 1985, revealed that the lease agreement at

---

1. The lease agreement requires that Forte Properties install electrical outlets, plumbing such that the Debtor can install darkrooms, and partitions to divide up the otherwise open office space into work areas. As confirmed by the testimony of Arthur Bucknell, Vice-President of the Debtor, on June 25, 1985, such preparation work is typical in a new-building business lease because of each tenant's unique office space needs. Ordinarily, such preparation work is done either entirely or partially at the expense of the new tenant, depending on the relative bargaining strength of the parties. It is highly unusual for the entire expense to be absorbed by the landlord.

The testimony of John Forte, sole shareholder and president of Forte Properties, also on June 25, 1985, revealed that Forte Properties does not dispute that such preparation work is customary. However, Forte Properties does assert that

the preparation work required of it under the contract is extraordinary, and that the cost to it of such work constitutes a "financial accommodation" within the meaning of section 365(c)(2). Although the Court does believe that the contract terms of the lease may well be favorable to the Debtor, this does not make the lease a "financial accommodation." And though the Court might sympathize with Forte Properties, if in fact its position is unfavorable, the Court has been presented with no evidence suggesting that the contract terms were not fairly bargained for by the parties. Mr. Forte testified that the office real estate market in Miami was "extremely soft" at the time he negotiated the lease with UPI and that it is not so soft now.

2. This, too, was disclosed by Mr. Forte while testifying before the Court on June 25, 1985.

issue represents the culmination of an extensive search for a new Miami-based office. The Debtor felt compelled to search for a new office building primarily because of safety problems with its present building. Several employees at the present Miami bureau have been attacked or mugged when on the street outside the office building.[3] One of the attractions of the subject property, in turn, is that the Debtor's employees will have access to a secure garage in the building itself. This means that no employee will have to walk on the street either coming to or leaving work. Such a precaution is not unreasonable, since the Debtor's business operates 24 hours a day, many employees arrive and depart from the office at night, and there already have been 36 incidents in which the Debtor's employees were either actually harmed or threatened with harm. *See supra*, note 3.

Mr. Bucknell also testified that the location of the subject property near several major highways is "ideal" for the Debtor for two reasons. First, it is easily accessible from the homes of the majority of the Debtor's employees. Second, it allows reporters in the building to get quickly to areas of fast-breaking stories. Furthermore, under the terms of the lease, Mr. Bucknell estimated that the Debtor would save between $30,000 and $50,000 in comparison to other office leases which the Debtor had considered.

Based on these three factors, *i.e.,* lease terms, location and safety, the Debtor has concluded that its best interest is served by assuming this unexpired lease. The Court is persuaded by Mr. Bucknell's testimony, and believes that the terms of the lease are favorable to the Debtor given its specific needs and concerns.

Moreover, the Debtor's lease at its present Miami location has expired, and the Debtor is now occupying those premises on a month-to-month basis, by the grace of the landlord of those premises. That landlord has rented those premises to a new tenant and is anxious for UPI to move out promptly.

■ Assumption of this contract, therefore, is clearly in the best interest of the Debtor. The Debtor has met the "business judgment" test overwhelmingly. That fact is not seriously disputed by Forte Properties.

Nor, in view of the fact that UPI is not now in default in any way, and that Forte Properties already holds a $6,600 security deposit, does Forte Properties contend that any further "adequate assurance of future performance" by the Debtor should be required. 11 U.S.C. § 365(b)(1). As explicitly set out in § 365(b)(1) itself, its strictures apply only "[i]f there has been a default ..." by the Debtor.

■ Thus, the sole question for the Court's consideration is whether the Trustee is prohibited from assuming this lease because of section 365(c)(2) of the Bankruptcy Code. Forte Properties claims that the lease constitutes a "financial accommodation" within the meaning of section 365(c)(2), and hence is non-assumable. The essence of Forte Properties' assertion is that, since the lease requires it to expend money in order to prepare the office for the Debtor's occupancy, such an expenditure amounts to a "financial accommodation" for the Debtor. This argument is, quite simply, specious. Under section 365(c)(2), a "contract to make a loan, or extend other financing or financial accommodations, to or for the benefit of the Debtor" is non-assumable by the Debtor. 11 U.S.C. § 365(c)(2). However, it is clear that this language was not intended by Congress to include ordinary leases to provide space, goods or services. 124 Cong.Rec. H. 11093 (Sept. 28, 1978); House Report No. 95–595, 95th Cong., 1st Sess. 348 (1977), Senate Report No. 95–989, 95th Cong., 2nd Sess. 59 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6304 ("... under the provision [section 365(c)(2)] contracts such as loan commitments and letters of credit ...

---

3. According to the testimony of Mr. Bucknell, there have been 36 reported incidents in which an employee of the Debtor was threatened or harmed.

may not be assumed by the trustee"). Rather, the intent of Congress was to prohibit the assumption of any contract wherein the Debtor is extended, directly or indirectly, cash or a line of credit. *Id.* The lease term which requires Forte Properties to pay for preparation work at the subject property according to the Debtor's business needs simply is not the extension of cash or a line of credit. That Forte Properties is obligated to spend money under the lease to make it suitable for occupation by the Debtor does not mean that the Debtor is being financed. The Debtor will receive no fiscal benefit similar to a loan or letter of credit. All the Debtor will receive is office space with partitions, electricity, and a certain number of water pipes for the installation of dark rooms. That is, the Debtor will receive precisely those goods and services to which the parties agreed under the terms of the lease, which are precisely the kinds of things that any lessee of office space receives under a lease.

The same committee reports also state that section 365 "permits the trustee to continue to use and pay for property *already advanced,* but is not designed to permit the trustee to demand *new* loans or *additional* transfers of property under lease commitments." *Id.* (emphasis added). The reports do not explain how "additional transfers of property" can be subsumed within the term "financial accommodations," and it is not clear to this Court that the statute can or should be interpreted as broadly as this isolated passage in two committee reports might suggest. What is clear is that, in the instant case, the legal "transfer of property" took place at the time the lease was signed. So far as the record reveals, the lease contains no commitment for any "additional transfers of property" at any future time. At any rate, the Debtor is not now seeking to enforce any such commitment. In this case, the lease covering this specific property has already been signed, and thus this specific property has already been leased to the Debtor.

The legislative history goes on to state that, under § 365(c)(2), "contracts *such as* loan commitments and letters of credit may not be assumed by the trustee." House Report No. 95–595, 9th Cong., 1st Sess. 348 (1977), Senate Report No. 95–989, 95th Cong., 2nd Sess. 59 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6304 (emphasis added). The instant lease contract is not a financial accommodation precisely because it is not like a loan commitment or letter of credit. To interpret "financial accommodation" to include the lease contract at issue here would be to allow the exception to swallow the rule. Under such a broad interpretation, any contract could be viewed as providing some financial benefit, and therefore no contract would be assumable.

The cases cited by Forte Properties in its legal memorandum have served only to convince the Court that this interpretation of section 365(c)(2) is correct. The courts have consistently followed such a nonexpansive construction. In *In re Town Mall,* 17 B.R. 326, 327 (Bankr.D.S.D.1982), what was involved was a loan commitment, which the court held was not assumable by the Debtor under section 365(c)(2). Similarly, in *In re Continental Enterprises, Inc.,* 26 B.R. 308, 309 (Bankr.S.D.Fla.1982), a debtor was prohibited from assuming a loan contract in which the creditors had not yet advanced all the funding contemplated by the note and mortgage between the parties, so that the debtor could complete the construction of an apartment building. The court held that "the debtor cannot assume that contract and, therefore, there is no continuing obligation on the [creditors'] part to complete the funding." Finally, in *In re Swift Aire Lines, Inc.,* 30 B.R. 490, 496 (Bankr.App.Panel, 9th Cir., 1983), the appellate panel held that "letters of credit were executory contracts to make a financial accommodation to or for the benefit of the debtor" and hence were nonassumable pursuant to section 365(c)(2). These three cases, which are the only cases cited by Forte Properties in its legal memorandum, in no way suggest that the preparation of office space pursuant to lease terms is a financial accommodation. Rath-

er, they all dealt with advances of cash or cash equivalent to or for the benefit of the debtor. Thus, they fortify this Court's conclusion that the term "financial accommodation" should not be so broadly construed as Forte Properties contends.

For all these reasons, Forte Properties has not shown that the lease contract at issue is a financial accommodation, and the Court must and will grant the Debtor's application to assume that lease.

NOW THEREFORE IT IS ORDERED, ADJUDGED AND DECREED, that the Debtor's application to assume a non-residential real estate lease between it and Forte Properties, covering office space at 2100 Coral Way, Miami, Dade County, Florida, is hereby granted pursuant to section 365 of the Bankruptcy Code.