LOUIS PASTOR, Plaintiff-Appellee, *v.* NATIONAL REPUBLIC BANK OF CHICAGO, Defendant-Appellee.—(THOMAS A. HARNETT, Superintendent of Insurance of the State of New York, Proposed Intervenor-Appellant.)

First District (4th Division)   No. 76-732

Opinion filed December 29, 1977.—Rehearing denied January 26, 1978.

James G. McConnell, of Rooks, Pitts, Fullagar and Poust, of Chicago, for appellant.

Barbara B. Hirsch, of Chicago, for appellee Louis Pastor.

Spatuzza & Spatuzza, of Chicago (Alan M. Polikoff, of counsel), for appellee National Republic Bank of Chicago.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Louis Pastor, filed an action in the circuit court of Cook County seeking injunctive relief to prevent defendant, National Republic Bank of Chicago, from paying out funds evidenced by an irrevocable letter of credit. This instrument had been issued by defendant at plaintiff's request to Summit Insurance Company of New York (hereinafter Summit). Summit then entered into liquidation in New York, and Thomas A. Harnett, the Superintendent of Insurance in New York, was appointed as liquidator. He forwarded a sight draft to defendant requesting defendant transfer the aforesaid funds for use in the liquidation proceedings. The trial court granted plaintiff's request for a preliminary injunction to prohibit such transfer. It also denied the liquidator's petition for leave to intervene and he has appealed, contesting the propriety of the latter determination.

We reverse and remand the matter for further proceedings.

The complaint for injunctive relief alleged that plaintiff was affiliated with Associated Surety Agents, Inc. (hereinafter Associated), which was an insurance agency representing Summit since June 1972. Summit and Associated had entered into a general agency agreement at that time as a retrospective profit commission contract. The complaint further averred that in order to secure any deficits arising from the agreement, plaintiff obtained a letter of credit issued by defendant. Thereafter, the liquidator

claimed that the funds evidenced by the letter of credit should be issued to him. However, plaintiff denied such funds were owing to Summit and asserted that the liquidator had not shown Summit was entitled to the funds.

In his petition to intervene, the liquidator asserted that Summit had been ordered into liquidation in a New York judicial proceeding. As liquidator, he had been invested with title to all property, contracts, and rights of action accruing to Summit. Noting that a preliminary injunction has already been issued on behalf of plaintiff to prevent transfer of the funds as evidenced by the irrevocable letter of credit, the liquidator sought leave to intervene and dissolution of the preliminary injunction.

The trial court denied the liquidator's right to intervene, finding only that the irrevocable letter of credit was not assignable or transferable thereby depriving the liquidator of a sufficient basis upon which to predicate intervention. It also directed that all prior orders would remain in effect. The court then found that no just reason existed to delay enforcement of the order or appeal. Ill. Rev. Stat. 1975, ch. 110A, par. 304(a).

Both plaintiff and defendant argue, *inter alia*, that the trial court did not err in disallowing the liquidator's petition to intervene. They rely on section 5—116(1) of the Uniform Commercial Code which provides "The right to draw under a credit can be transferred or assigned only when the credit is expressly designated as transferable or assignable." (Ill. Rev. Stat. 1975, ch. 26, par. 5—116(1).) They characterize the liquidator as merely an assignee of any rights which Summit may have had (*cf. McIlvaine v. City National Bank & Trust Co.* (1942), 314 Ill. App. 496, 520-21, 42 N.E.2d 93, 105); and they conclude that since the irrevocable letter of credit did not expressly allow assignability, the liquidator had no basis upon which he might seek to intervene.

■■ A letter of credit is "an engagement by a bank or other person made at the request of a customer * * * that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit * * *." (Ill. Rev. Stat. 1975, ch. 26, par. 5—103(1)(a).) While originally established to secure the shipment of merchandise, the concept of a letter of credit has expanded into other commercial endeavors. Harfield, *The Increasing Domestic Use of the Letter of Credit*, 4 U.C.C. L.J. 251, 252 (1971-72).

■■ No party has cited controlling authority in the construction of section 5—116(1) of the Uniform Commercial Code under the circumstances presented in this case. In construing section 5—116(1), we are to give effect to the intention of the legislature. (*Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 553, 309 N.E.2d 550, 553.) In this endeavor, we may examine the Uniform Code Comment as to discern the

legislature's intent. See *People v. Wallace* (1974), 57 Ill. 2d 285, 290, 312 N.E.2d 263, 266.

The Uniform Commercial Code was compiled by the National Conference of Commissioners on Uniform State Laws in conjunction with the American Law Institute (hereinafter referred to as ALI). Several drafts of the Code were propounded and the version adopted in 1958 with limited variations was enacted in Illinois in 1961. Jenner and Davenport, General Introduction, Ill. Ann. Stat., ch. 26, at XLIV-XLV (Smith-Hurd 1963).

The ALI's proposed final draft in 1950 concerning letters of credit provided that the beneficiary of an irrevocable letter of credit could assign his rights unless otherwise expressly prohibited. (ALI U.C.C. §5—126(1), at 548 (Spring 1950 Draft).) The drafter's commentary referred to a typical import-export commercial transaction in favoring the assignment of rights under any irrevocable letter of credit. ALI U.C.C. §5—126, Comment 1, at 549 (Spring 1950 Draft).

In 1952, ALI adopted an official draft. However, it took the position that rights derived from a letter of credit could be assigned only by the authority of the issuer of the credit and if such right was expressly stated to be assignable. The comment set forth the principle that in such transactions "the supplier (beneficiary) chosen by the buyer (customer) cannot substitute another supplier in his place, without the buyer's authorization." ALI U.C.C. §5—115, Comment 1, at 531 (1952 Draft).

As heretofore set forth, section 5—116, as enacted in Illinois, prohibits assignment or transfer of rights under a letter of credit unless expressly provided. The Code Comment to this section refers to the usual commercial transaction involving a manufacturer. While the term "assignment of the credit" is not delimited, it is noted that a letter of credit was designed to secure and insure performance in a commercial transaction. Ill. Ann. Stat., ch. 26, par. 5—116, Uniform Commercial Code Comment, at 606 (Smith-Hurd 1963).

■■ Our examination of the development and the intent of section 5—116 of the Uniform Commercial Code clearly suggests that the present circumstances were not intended to be within the ambit of that section. Our position is further supported by comparable provisions in Illinois and New York which vest the liquidator by operation of law with the property of a defunct insurance company. (Ill. Rev. Stat. 1975, ch. 73, par. 803; N.Y. Ins. Law §514 (McKinney 1966).) We therefore hold that section 5—116(1) does not preclude the liquidator's possible claim in this case.

Having concluded that such claim was not obtained in derogation of section 5—116(1), we now consider whether the liquidator's petition to intervene was properly denied. Section 26.1(1) of the Civil Practice Act, as amended, pertains to intervention and provides:

"(1) Upon timely application anyone shall be permitted as of right to intervene in an action: * * * (b) when the representation of the applicant's interest of existing parties is or may be inadequate and the applicant will or may be bound by a judgment, decree or order in the action; or (c) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or an officer thereof." Ill. Rev. Stat. 1975, ch. 110, par. 26.1(1).

Relying on section 26.1(1)(b), the liquidator claims that his interest will not be represented by either party to the proceeding should a permanent injunction be sought to prevent the liquidator's claim. The liquidator asserts his interest is adverse to plaintiff because defendant will look to plaintiff for reimbursement should defendant pay the amount sought by the liquidator. He also contends his interest is divergent from defendant because, if plaintiff repays the amount defendant would pay to the liquidator, defendant would not be prejudiced. However, if plaintiff cannot repay the full amount, defendant would favor sustaining plaintiff's request for injunctive relief in order to prevent a loss by its honoring the liquidator's demand. The contention that defendant would not adequately protect the liquidator's interest is further supported by defendant's adverse position on appeal.

In regard to section 26.1(1)(c), the liquidator says that he would be deprived of $25,000 if a permanent injunction is issued. Thus, he maintains he is adversely affected by precluding his right to intervene.

■■ There is no doubt that the liquidator's interest was adversely affected by the trial court's injunctive relief to plaintiff, and we agree that his interest may not be properly protected by other parties. We therefore conclude that the trial court improperly denied the liquidator's petition to intervene. *Yangas v. Mercantile Laundry Co.* (1974), 19 Ill. App. 3d 111, 114, 311 N.E.2d 216, 218.

Other issues were raised in the trial court relative to the liquidator's claim, but the trial court did not rule on these matters. We believe that the trial court should initially rule on these questions upon proper development after the liquidator's petition to intervene is granted.

Accordingly, the judgment of the circuit court of Cook County is reversed and the cause remanded; the trial court is directed to grant the liquidator's petition to intervene and conduct further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

ROMITI and LINN, JJ., concur.