**AMERICAN BELL INTERNATIONAL, INC., Plaintiff,**

v.

**The ISLAMIC REPUBLIC OF IRAN, Bank Iranshahr and Manufacturers Hanover Trust Company, Defendants.**

**No. 79 Civ. 3904 (RO).**

United States District Court,
S. D. New York.

Aug. 4, 1979.

Cleary, Gottlieb, Steen & Hamilton, New York City, by James C. Blair, M. Karlynn Hinman and Jonathan I. Blackman, New York City, for plaintiff.

Simpson, Thacher & Bartlett, New York City, by Roy L. Reardon, Henry Landau, James J. Haugh and John J. Kerr, Jr., New York City, for defendant Mfrs. Hanover Trust Co.

## OPINION

MacMAHON, District Judge.

Plaintiff American Bell International Inc. ("Bell") moves for a preliminary injunction pursuant to Rule 65(a), Fed.R.Civ.P. and the All Writs Act, 28 U.S.C. § 1651, enjoining defendant Manufacturers Hanover Trust Company ("Manufacturers") from making any payment under its Letter of Credit No. SC 170027 to defendants the Islamic Republic of Iran or Bank Iranshahr or their agents, instrumentalities, successors, employees and assigns. We held an evidentiary hearing and heard oral argument on August 3, 1979. The following facts appear from the evidence presented:

The action arises from the recent revolution in Iran and its impact upon contracts made with the ousted Imperial Government of Iran and upon banking arrangements incident to such contracts. Bell, a wholly-owned subsidiary of American Telephone & Telegraph Co. ("AT & T"), made a contract on July 23, 1978 (the "Contract") with the Imperial Government of Iran—Ministry of War ("Imperial Government") to provide consulting services and equipment to the Imperial Government as part of a program to improve Iran's international communications system.

The Contract provides a complex mechanism for payment to Bell totalling approximately $280,000,000, including a down payment of $38,800,000. The Imperial Government had the right to demand return of the down payment at any time. The amount so callable, however, was to be reduced by 20% of the amounts invoiced by Bell to which the Imperial Government did not object. Bell's liability for return of the down payment was reduced by application of this mechanism as the Contract was performed, with the result that approximately $30,200,000 of the down payment now remains callable.

In order to secure the return of the down payment on demand, Bell was required to establish an unconditional and irrevocable Letter of Guaranty, to be issued by Bank Iranshahr in the amount of $38,800,000 in favor of the Imperial Government. The Contract provides that it is to be governed by the laws of Iran and that all disputes arising under it are to be resolved by the Iranian courts.

Bell obtained a Letter of Guaranty from Bank Iranshahr. In turn, as required by Bank Iranshahr, Bell obtained a standby Letter of Credit, No. SC 170027, issued by Manufacturers in favor of Bank Iranshahr in the amount of $38,800,000 to secure reimbursement to Bank Iranshahr should it be required to pay the Imperial Government under its Letter of Guaranty.

The standby Letter of Credit provided for payment by Manufacturers to Bank Iranshahr upon receipt of:

"Your [Bank Iranshahr's] dated statement purportedly signed by an officer indicating name and title or your Tested Telex Reading: (A) 'Referring Manufacturers Hanover Trust Co. Credit No. SC170027, the amount of our claim $ represents funds due us as we have received a written request from the Imperial Government of Iran Ministry of War to pay them the sum of under our Guarantee No. issued for the account of American Bell International Inc. covering advance payment under

Contract No. 138 dated July 23, 1978 and such payment has been made by us' . . .."

In the application for the Letter of Credit, Bell agreed—guaranteed by AT & T—immediately to reimburse Manufacturers for all amounts paid by Manufacturers to Bank Iranshahr pursuant to the Letter of Credit.

Bell commenced performance of its Contract with the Imperial Government. It provided certain services and equipment to update Iran's communications system and submitted a number of invoices, some of which were paid.

In late 1978 and early 1979, Iran was wreaked with revolutionary turmoil culminating in the overthrow of the Iranian government and its replacement by the Islamic Republic. In the wake of this upheaval, Bell was left with substantial unpaid invoices and claims under the Contract and ceased its performance in January 1979. Bell claims that the Contract was breached by the Imperial Government, as well as repudiated by the Islamic Republic, in that it is owed substantial sums for services rendered under the Contract and its termination provisions.

On February 16, 1979, before a demand had been made by Bank Iranshahr for payment under the Letter of Credit, Bell and AT & T brought an action against Manufacturers in the Supreme Court, New York County, seeking a preliminary injunction prohibiting Manufacturers from honoring any demand for payment under the Letter of Credit. The motion for a preliminary injunction was denied in a thorough opinion by Justice Dontzin on March 26, 1979, and the denial was unanimously affirmed on appeal by the Appellate Division, First Department.

On July 25 and 29, 1979, Manufacturers received demands by Tested Telex from Bank Iranshahr for payment of $30,220,724 under the Letter of Credit, the remaining balance of the down payment. Asserting that the demand did not conform with the Letter of Credit, Manufacturers declined payment and so informed Bank Iranshahr. Informed of this, Bell responded by filing this action and an application by way of order to show cause for a temporary restraining order bringing on this motion for a preliminary injunction. Following argument, we granted a temporary restraining order on July 29 enjoining Manufacturers from making any payment to Bank Iranshahr until forty-eight hours after Manufacturers notified Bell of the receipt of a conforming demand, and this order has been extended pending decision of this motion.

On August 1, 1979, Manufacturers notified Bell that it had received a conforming demand from Bank Iranshahr. At the request of the parties, the court held an evidentiary hearing on August 3 on this motion for a preliminary injunction.

### Criteria for Preliminary Injunctions

■ The current criteria in this circuit for determining whether to grant the extraordinary remedy of a preliminary injunction are set forth in *Caulfield v. Board of Education,* 583 F.2d 605, 610 (2d Cir. 1978):

"[T]here must be a showing of possible irreparable injury *and* either (1) probable success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

We are not persuaded that the plaintiff has met the criteria and therefore deny the motion.

### A. Irreparable Injury

Plaintiff has failed to show that irreparable injury may possibly ensue if a preliminary injunction is denied. Bell does not even claim, much less show, that it lacks an adequate remedy at law if Manufacturers makes a payment to Bank Iranshahr in violation of the Letter of Credit. It is too clear for argument that a suit for money damages could be based on any such violation, and surely Manufacturers would be able to pay any money judgment against it.

Bell falls back on a contention that it is without any effective remedy unless it can

restrain payment. This contention is based on the fact that it agreed to be bound by the laws of Iran and to submit resolution of any disputes under the Contract to the courts of Iran. Bell claims that it now has no meaningful access to those courts.

There is credible evidence that the Islamic Republic is xenophobic and anti-American and that it has no regard for consulting service contracts such as the one here. Although Bell has made no effort to invoke the aid of the Iranian courts, we think the current situation in Iran, as shown by the evidence, warrants the conclusion that an attempt by Bell to resort to those courts would be futile. *Cf. Stromberg-Carlson Corp. v. Bank Melli*, 467 F.Supp. 530 (Weinfeld, J.) (S.D.N.Y. 1979). However, Bell has not demonstrated that it is without adequate remedy in this court against the Iranian defendants under the Sovereign Immunity Act which it invokes in this very case. 28 U.S.C. §§ 1605(a)(2), 1610(b)(2) (Supp. 1979).

Accordingly, we conclude that Bell has failed to demonstrate irreparable injury.

## B. *Probable Success on the Merits*

Even assuming that plaintiff has shown possible irreparable injury, it has failed to show probable success on the merits. *Caulfield v. Board of Education, supra*, 583 F.2d at 610.

In order to succeed on the merits, Bell must prove, by a preponderance of the evidence, that either (1) a demand for payment of the Manufacturers Letter of Credit conforming to the terms of that Letter has not yet been made, *see, e. g., Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 465 (2d Cir. 1970); *North American Foreign Trading Corp. v. General Electronics Ltd.*, App.Div., 413 N.Y.S.2d 700 (1st dep't 1979), or (2) a demand, even though in conformity, should not be honored because of fraud in the transaction, *see, e. g.*, N.Y. UCC § 5–114(2); *United Bank Ltd. v. Cambridge Sporting Goods Corp.*, 41 N.Y.2d 254, 392 N.Y.S.2d 265, 360 N.E.2d 943 (1976); *Dynamics Corp. v. Citizens & Southern Nat'l Bank*, 356 F.Supp. 991 (N.D.Ga.1973). It is not probable, in the sense of a greater than 50% likelihood, that Bell will be able to prove either nonconformity or fraud.

As to nonconformity, the August 1 demand by Bank Iranshahr is identical to the terms of the Manufacturers Letter of Credit in every respect except one: it names as payee the "Government of Iran Ministry of Defense, Successor to the Imperial Government of Iran Ministry of War" rather than the "Imperial Government of Iran Ministry of War." *Compare* defendants' Exhibit A *with* Complaint Exhibit C. It is, of course, a bedrock principle of letter of credit law that a demand must strictly comply with the letter in order to justify payment. *See, e. g., Key Appliance, Inc. v. First Nat'l City Bank*, 46 A.D.2d 622, 359 N.Y.S.2d 866 (1st dep't 1974), *aff'd*, 37 N.Y.2d 826, 377 N.Y.S.2d 482, 339 N.E.2d 888 (1975). Nevertheless, we deem it less than probable that a court, upon a full trial, would find nonconformity in the instant case.

At the outset, we notice, and the parties agree, that the United States now recognizes the present Government of Iran as the legal successor to the Imperial Government of Iran. That recognition is binding on American Courts. *Guaranty Trust Co. v. United States*, 304 U.S. 126, 137–38, 58 S.Ct. 785, 82 L.Ed. 1224 (1938). Though we may decide for ourselves the consequences of such recognition upon the litigants in this case, *id.*, we point out that American courts have traditionally viewed contract rights as vesting not in any particular government but in the state of which that government is an agent. *Id.*

Accordingly, the Government of Iran is the successor to the Imperial Government under the Letter of Guaranty. As legal successor, the Government of Iran may properly demand payment even though the terms of the Letter of Guaranty only provide for payment to the Government of Iran's predecessor, *see Pastor v. National Republic Bank*, 56 Ill.App.3d 421, 14 Ill.Dec. 74, 371 N.E.2d 1127 (1977), *aff'd*, 76 Ill.2d 139, 28 Ill.Dec. 535, 390 N.E.2d 894 (1979),

and a demand for payment under the Letter of Credit reciting that payment has been made by Bank Iranshahr to the new government is sufficient. We are fortified in this conclusion and made confident that a court, upon full trial, would reach the same result by Justice Dontzin's decision in the New York Supreme Court earlier this year that the Government of Iran was the legal successor to the Imperial Government of Iran. *See American Bell Int'l, Inc. v. Manufacturers Hanover Trust Co.*, No. 3157/79 (Sup.Ct. Mar. 26, 1979).

Finally, an opposite answer to the narrow question of conformity would not only elevate form over substance, but would render financial arrangements and undertakings worldwide wholly subject to the vicissitudes of political power. A nonviolent, unanimous transformation of the form of government, or, as this case shows, the mere change of the name of a government agency, would be enough to warrant an issuer's refusal to honor a demand. We cannot suppose such uncertainty and opportunity for chicanery to be the purpose of the requirement of strict conformity.

■ If conformity is established, as here, the issuer of an irrevocable, unconditional letter of credit, such as Manufacturers normally has an absolute duty to transfer the requisite funds. This duty is wholly independent of the underlying contractual relationship that gives rise to the letter of credit. *Shanghai Commercial Bank, Ltd. v. Bank of Boston Int'l*, 53 A.D.2d 830, 385 N.Y.S.2d 548 (1st dep't 1976). Nevertheless, both the Uniform Commercial Code of New York, which the parties concede governs here, and the courts state that payment is enjoinable where a germane document is forged or fraudulent or there is "fraud in the transaction." N.Y.U.C.C. § 5–114(2); *United Bank Ltd. v. Cambridge Sporting Goods Corp., supra.* Bell does not contend that any documents are fraudulent by virtue of misstatements or omissions. Instead, it argues there is "fraud in the transaction."

The parties disagree over the scope to be given as a matter of law to the term "trans-

action." Manufacturers, citing voluminous authorities, argues that the term refers only to the Letter of Credit transaction, not to the underlying commercial transaction or to the totality of dealings among the banks, the Iranian government and Bell. On this view of the law, Bell must fail to establish a probability of success, for it does not claim that the Imperial Government or Bank Iranshahr induced Manufacturers to extend the Letter by lies or half-truths, that the Letter contained any false representations by the Imperial Government or Bank Iranshahr, or that they intended misdeeds with it. Nor does Bell claim that the demand contains any misstatements.

Bell argues, citing equally voluminous authorities, that the term "transaction" refers to the totality of circumstances. On this view, Bell has some chance of success on the merits, for a court can consider Bell's allegations that the Government of Iran's behavior in connection with the consulting contract suffices to make its demand on the Letter of Guaranty fraudulent and that the ensuing demand on the Letter of Credit by Bank Iranshahr is tainted with the fraud.

There is some question whether these divergent understandings of the law are wholly incompatible since it would seem impossible to keep the Letter of Credit transaction conceptually distinct. A demand which facially conforms to the Letter of Credit and which contains no misstatements may, nevertheless, be considered fraudulent if made with the goal of mulcting the party who caused the Letter of Credit to be issued. Be that as it may, we need not decide this thorny issue of law. For, even on the construction most favorable to Bell, we find that success on the merits is not probable. Many of the facts alleged, even if proven, would not constitute fraud. As to others, the proof is insufficient to indicate a probability of success on the merits.

Bell, while never delineating with precision the contours of the purported fraud, sets forth five contentions which, in its view, support the issuance of an injunction. Bell asserts that (1) both the old and new

Governments failed to approve invoices for services fully performed; (2) both failed to fund contracted-for independent Letters of Credit in Bell's favor; (3) the new Government has taken steps to renounce altogether its obligations under the Contract; (4) the new Government has made it impossible to assert contract rights in Iranian courts; and (5) the new Government has caused Bank Iranshahr to demand payment on the Manufacturers Letter of Credit, thus asserting rights in a transaction it has otherwise repudiated. Plaintiff's Memorandum (Aug. 2, 1979) at 17–18.

As to contention (4), it is not immediately apparent how denial of Bell's opportunity to assert rights under the Contract makes a demand on an independent letter of credit fraudulent.

Contentions (1), (2), (3) and the latter part of (5) all state essentially the same proposition—that the Government of Iran is currently repudiating all its contractual obligations with American companies, including those with Bell. Again, the evidence on this point is uncompelling.

Bell points to (1) an intragovernmental order of July 2, 1979 ordering the termination of Iran's contract with Bell, and (2) hearsay discussions between Bell's president and Iranian officials to the effect that Iran would not pay on the Contract until it had determined whether the services under it had benefited the country. Complaint Exhibit E; Kerts Affidavit ¶ 3. Manufacturers, for its part, points to a public statement in the Wall Street Journal of July 16, 1979, under the name of the present Iranian Government, to the effect that Iran intends to honor all legitimate contracts. Defendant's Exhibit C. Taken together, this evidence does not suggest that Iran has finally and irrevocably decided to repudiate the Bell contract. It suggests equally that Iran is still considering the question whether to perform that contract.

Even if we accept the proposition that the evidence does show repudiation, plaintiff is still far from demonstrating the kind of evil intent necessary to support a claim of fraud. Surely, plaintiff cannot contend that every party who breaches or repudiates his contract is for that reason culpable of fraud. The law of contract damages is adequate to repay the economic harm caused by repudiation, and the law presumes that one who repudiates has done so because of a calculation that such damages are cheaper than performance. Absent any showing that Iran would refuse to pay damages upon a contract action here or in Iran, much less a showing that Bell has even attempted to obtain such a remedy, the evidence is ambivalent as to whether the purported repudiation results from nonfraudulent economic calculation or from fraudulent intent to mulct Bell.

Plaintiff contends that the alleged repudiation, viewed in connection with its demand for payment on the Letter of Credit, supplies the basis from which only one inference—fraud—can be drawn. Again, we remain unpersuaded.

Plaintiff's argument requires us to presume bad faith on the part of the Iranian government. It requires us further to hold that that government may not rely on the plain terms of the consulting contract and the Letter of Credit arrangements with Bank Iranshahr and Manufacturers providing for immediate repayment of the down payment upon demand, without regard to cause. On the evidence before us, fraud is no more inferable than an economically rational decision by the government to recoup its down payment, as it is entitled to do under the consulting contract and still dispute its liabilities under that Contract.

While fraud in the transaction is doubtless a possibility, plaintiff has not shown it to be a probability and thus fails to satisfy this branch of the *Caulfield* test.

C. *Serious Questions and Balance of Hardships*

If plaintiff fails to demonstrate probable success, he may still obtain relief by showing, in addition to the possibility of irreparable injury, both (1) sufficiently serious questions going to the merits to make them a fair ground for litigation, and (2) a balance of hardships tipping decidedly toward

plaintiff. *Caulfield v. Board of Education, supra.* Both Bell and Manufacturers appear to concede the existence of serious questions, and the complexity and novelty of this matter lead us to find they exist. Nevertheless, we hold that plaintiff is not entitled to relief under this branch of the *Caulfield* test because the balance of hardships does not tip *decidedly* toward Bell, if indeed it tips that way at all.

To be sure, Bell faces substantial hardships upon denial of its motion. Should Manufacturers pay the demand, Bell will immediately become liable to Manufacturers for $30.2 million, with no assurance of recouping those funds from Iran for the services performed. While counsel represented in graphic detail the other losses Bell faces at the hands of the current Iranian government, these would flow regardless of whether we ordered the relief sought. The hardship imposed from a denial of relief is limited to the admittedly substantial sum of $30.2 million.

But Manufacturers would face at least as great a loss, and perhaps a greater one, were we to grant relief. Upon Manufacturers' failure to pay, Bank Iranshahr could initiate a suit on the Letter of Credit and attach $30.2 million of Manufacturers' assets in Iran. In addition, it could seek to hold Manufacturers liable for consequential damages beyond that sum resulting from the failure to make timely payment. Finally, there is not guarantee that Bank Iranshahr or the government, in retaliation for Manufacturers' recalcitrance, will not nationalize additional Manufacturers' assets in Iran in amounts which counsel, at oral argument, represented to be far in excess of the amount in controversy here.

Apart from a greater monetary exposure flowing from an adverse decision, Manufacturers faces a loss of credibility in the international banking community that could result from its failure to make good on a letter of credit.

### Conclusion

Finally, apart from questions of relative hardship and the specific criteria of the *Caulfield* test, general considerations of equity counsel us to deny the motion for injunctive relief. Bell, a sophisticated multinational enterprise well advised by competent counsel, entered into these arrangements with its corporate eyes open. It knowingly and voluntarily signed a contract allowing the Iranian government to recoup its down payment on demand, without regard to cause. It caused Manufacturers to enter into an arrangement whereby Manufacturers became obligated to pay Bank Iranshahr the unamortized down payment balance upon receipt of conforming documents, again without regard to cause.

Both of these arrangements redounded tangibly to the benefit of Bell. The Contract with Iran, with its prospect of designing and installing from scratch a nationwide and international communications system, was certain to bring to Bell both monetary profit and prestige and good will in the global communications industry. The agreement to indemnify Manufacturers on its Letter of Credit provided the means by which these benefits could be achieved.

One who reaps the rewards of commercial arrangements must also accept their burdens. One such burden in this case, voluntarily accepted by Bell, was the risk that demand might be made without cause on the funds constituting the down payment. To be sure, the sequence of events that led up to that demand may well have been unforeseeable when the contracts were signed. To this extent, both Bell and Manufacturers have been made the unwitting and innocent victims of tumultuous events beyond their control. But, as between two innocents, the party who undertakes by contract the risk of political uncertainty and governmental caprice must bear the consequences when the risk comes home to roost.

Manufacturers also contends that, in view of the action apparently still pending in the state courts, we should abstain from deciding the issues before us and that Bell is engaging in forum-shopping which dirties its hands so as to require a denial of injunctive relief. In view of our findings and conclusions based on the *Caulfield* test, we find it unnecessary to consider these contentions.

The foregoing opinion constitutes this court's findings of fact and conclusions of law, pursuant to Rule 52(a), Fed.R.Civ.P.

Accordingly, plaintiff's motion for a preliminary injunction, pursuant to Rule 65(a), Fed.R.Civ.P., is denied. However, Manufacturers Hanover Trust Company, its officers and agents are hereby enjoined from making any payments to Bank Iranshahr or the Islamic Republic of Iran, pursuant to the subject Letter of Credit, until August 6, 1979, at 3:00 P.M., to permit plaintiff to apply to the Court of Appeals for a stay pending appeal, if it is so advised.

So ordered.