**BRENNTAG INTERNATIONAL CHEMICALS, INC., Plaintiff–Appellee,**

v.

**BANK OF INDIA, Defendant–Cross–Claimant–Appellant,**

**Norddeutsche Landesbank GZ, Defendant.**

No. 98–7992.

United States Court of Appeals, Second Circuit.

Argued Feb. 9, 1999.

Decided April 26, 1999.

James C. Murray, Jr., Katten, Muchin & Zavis (Christian T. Kemnitz, Katten, Muchin & Zavis, of counsel; Linda C. Goldstein, Howard, Smith & Levin, New York, New York, of counsel), Chicago, Illinois, for Plaintiff–Appellee.

James D. Arden, Sidley & Austin (Rajiv Khanna, John J. Lavelle, of counsel), New York, New York, for Defendant–Cross–Claimant–Appellant.

Before: WINTER, Chief Judge, VAN GRAAFEILAND, and PARKER, Circuit Judges.

WINTER, Chief Judge:

Bank of India ("BOI") appeals from Judge Sweet's order preliminarily enjoining Norddeutsche Landesbank GZ ("NDL") from making payment under an irrevocable stand-by letter of credit ("LOC"). The LOC was issued by NDL at the request of Brenntag International Chemicals, Inc. ("Brenntag"), as applicant, made out to Petro Pharma PTE, Ltd. ("Petro") as beneficiary and named BOI as Petro's negotiator bank. Judge Sweet also enjoined BOI from commencing further litigation with respect to the LOC or making further attempts to collect thereunder. The district court concluded that: (i) BOI was not entitled to payment from NDL, because the documents it submitted to evidence its rights under the LOC were false on their face and BOI was not a holder in due course; and (ii) Petro's insolvency was sufficient under the circumstances to support a finding of irreparable harm. *See Brenntag Int'l Chems., Inc. v. Norddeutsche Landesbank GZ*, 9 F.Supp.2d 331, 341–46 (S.D.N.Y.1998). The district court also held that the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611, did not prohibit the injunction. *See Brenntag*, 9 F.Supp.2d at 346–47. We affirm.

## BACKGROUND

We briefly summarize the facts material to this appeal. The background is set forth in greater detail in the district court's opinion. *See id.* at 333–41.

In March 1996, Brenntag contracted with Petro to purchase about 15,000 metric tons of naphtha for shipment to a third party. The payment terms were secured by an irrevocable stand-by letter of credit in favor of Petro that Brenntag opened with NDL. The LOC could be drawn upon only after non-performance by Brenntag and submission to NDL of specified supporting documents, including a copy of the commercial invoice covering the purchased goods, a copy of the negotiable bill of lading indicating that the goods were shipped, and a letter signed by an authorized representative of Petro stating that "payment, which was due 360 days after completion of loading, has not been received and is due." *Id.* at 335 (quoting

LOC). Moreover, the originals of the documents were to be sent under cover letter from the beneficiary, Petro, to NDL. Because BOI was Petro's negotiator bank under the LOC, payment would be made through it, and, were it to advance funds against the LOC, BOI would be subrogated to Petro's rights.

Shortly after the LOC was opened, Petro sought to have BOI advance to it funds against, or "discount," Petro's expected receivable secured by the LOC. Petro also provided certain documents to BOI, including an undated default letter. Petro indicated in the letter accompanying the documents that they were provided "for the purposes of completing your records." *Id.* (quoting letter).

Certain of these documents contained errors. For instance, the invoice Petro submitted stated an incorrect unit price per metric ton. *See id.* at 336. More importantly, the default letter was facially invalid because it noticed Brenntag's default a full year prior to the earliest possible date of default under the LOC. Not surprisingly, the default letter was undated. In his deposition, Some Nath Banerjee, Manager of Trade Finance for BOI's Singapore Office, conceded that the default letter was "not true and could not have been true" at the time it was written. *Id.* In light of future events, it was also signed by someone who no longer worked for Petro at any time when a default could have occurred. Despite these irregularities, BOI decided to advance the funds sought by Petro. It did, however, obtain a personal guaranty from Narasimhan Ashok, one of Petro's directors.

Petro was having financial difficulty at this time and never shipped the naphtha. Accordingly, on June 22, 1996, Brenntag notified Petro that it was canceling its

purchase contract.[1] Shortly thereafter, B. Aranaprasad ("Prasad"), one of the Petro officers who had signed the undated default letter, resigned. Petro then sent a letter dated July 1, 1996, advising BOI, *inter alia*, that Prasad was no longer authorized to represent Petro. After Gandarvakottai Raghavan was appointed to replace Prasad, Petro sent a board resolution to BOI indicating which officers were entitled to sign documents on its behalf. Raghavan was listed and Prasad was not.[2]

In August 1996, BOI noticed that Petro was late on certain payments owed under another loan. It sought and received the money owed but proceeded to review Petro's other accounts. On August 28, 1996, BOI sent NDL a facsimile requesting acknowledgment of receipt of the original documents required to be submitted to it under the LOC. On September 3, 1996, NDL replied by telex that it had not yet received the documents. BOI then made several requests to Petro for receipts or other proof that it had sent the original documents to NDL. Petro never supplied the requested documents.

On September 24, 1996, BOI sent a facsimile to NDL stating that the "[d]ue date of bill is on 12/3/97 and we will present documents as per LOC terms." *Id.* at 339 (quoting facsimile). In reply thereto, NDL, by telex on October 4, 1996, stated that "the L/C expires on June 30, 1997 and can only be utilized against presentation of documents as [previously] outlined." *Id.* (quoting telex). BOI did not respond to this telex.

In February 1997, an advertisement in the Straits Times announced an involuntary liquidation proceeding against Petro filed by one of its creditors. BOI then contacted Petro about the money owed it pursuant to the loan against the LOC.

---

1. Brenntag did not immediately cancel the LOC, however, but, on March 13, 1997, sent NDL a letter requesting such action.

2. In the district court, BOI disputed certain events described as fact in the abbreviated background provided in this opinion. We do not dwell on the dispute because, as described below, BOI has conceded more than enough to allow the district court to conclude that it was and is not a holder in due course under the LOC.

Raghavan testified that he acknowledged Petro's liability to BOI and indicated that BOI should look to Ashok, the Petro director who had personally guaranteed Petro's obligations to BOI. Raghavan also informed Banerjee that attempts at collection under the LOC would be improper because no goods had been shipped and Brenntag had accordingly not defaulted.

Notwithstanding actual knowledge that Brenntag was not in default, Banerjee thereafter made repeated requests to Petro for a fresh default letter so that it might attempt to collect under the LOC. *See id.* at 340. Banerjee testified that he made these requests because the signatories on the undated letter in BOI's possession were no longer authorized to sign on Petro's behalf. Accordingly, the letter was facially invalid. When Petro denied BOI's requests for a new default letter, BOI date-stamped the original undated default letter and, on March 17, 1997, presented it to NDL along with its demand for payment under the LOC. *See id.*

On March 18, 1997, NDL notified BOI by telex that the documents it submitted contained inconsistencies and could not support payment. Numerous problems with the bill of lading were noted, and NDL indicated that it had never received original copies of the supporting documents as required by the LOC. Also, the amount owed as reflected on the invoice and the undated default letter were different. After BOI disputed the claimed inconsistencies, NDL restated its belief that the documents submitted did not conform with the LOC requirements. NDL also reminded BOI that it had never received from Petro the original documents required under the LOC. *See id.* at 340–41.

After BOI attempted to collect under the LOC, Ashok's attorney sent a letter to BOI instructing it to withdraw its "unauthorized and wrongfully lodged" claim, "as both the signatories were not in employment of Petro [ ] on the material date, nor was the letter of default in accordance with the terms of the [LOC]." *Id.* at 341 (quot-

ing letter). The letter also restated Ashok's admission of potential personal liability for the debt owed to BOI.

On April 16, 1997, Brenntag instituted the present action against NDL and BOI seeking to enjoin payment on the LOC. Brenntag concurrently moved for a temporary restraining order, which was granted that day, and a preliminary injunction, which was granted on June 18, 1998, and from which BOI now appeals.

## DISCUSSION

■ We review appealable interim orders, including the grant or denial of a motion for a preliminary injunction, with considerable deference, although we apply greater scrutiny where the order would effectively award victory in the litigation. *See Romer v. Green Point Sav. Bank,* 27 F.3d 12, 16 (2d Cir.1994). However, the injunction in this case merely preserves the status quo pending resolution of the underlying action, and we therefore review its issuance with the usual deference.

■ To justify the issuance of preliminary injunctive relief, a party must ordinarily show that it will suffer irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *See Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 33 (2d Cir.1995). As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). However, a perhaps more accurate description of the circumstances that constitute irreparable harm is that where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.

*See American Hosp. Supply Corp. v. Hospital Prods. Ltd.,* 780 F.2d 589, 594 (7th Cir.1986) ("The premise of the preliminary injunction is that the remedy available at the end of trial will not make the plaintiff whole."). For this reason, courts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents. *See id.* at 596 (insolvency supports finding of irreparable harm); *Carter–Wallace, Inc. v. Davis–Edwards Pharmacal Corp.,* 443 F.2d 867, 874 (2d Cir.1971) (insolvency not sufficient where claim in bankruptcy would receive priority and adequate security can be provided); *id.* at 888 (Mansfield, J., dissenting) (disagreeing, *inter alia,* as to ability of insolvent company to pay damages); *see also Rockwell Int'l Sys., Inc. v. Citibank, N.A.,* 719 F.2d 583, 586–88 (2d Cir.1983) (affirming injunction prohibiting Iranian bank from making demands under two letters of credit in light of effect of the Iranian revolution on availability of subsequent legal remedies).

In the instant matter, the district court concluded that Petro's insolvency, together with the weaker claims Brenntag would have against BOI or NDL were a demand under the LOC errantly paid, was sufficient to bring this case within the insolvency exception. *See Brenntag,* 9 F.Supp.2d at 345–46. BOI argues that because neither it nor NDL are insolvent, Brenntag has sufficient alternatives to an action against Petro to reduce the consequences of that company's insolvency. BOI also contends that the fact that NDL has already denied payment under the LOC demonstrates that the risk to Brenntag of fraudulent payment thereunder is minimal.

We see no reason, however, to upset the district court's ruling. First, the district court correctly noted that were the LOC paid upon, Brenntag's potential claims against NDL and BOI would be significantly weaker, both substantively and procedurally, than its potential claim against Petro. *See id.* at 346. Although we recognize the danger in finding irreparable harm where alternative, solvent defendants are available, Brenntag's claims against an admittedly non-delivering seller are far simpler and much stronger than potential claims against the issuer and holder of a letter of credit, as the present litigation amply demonstrates. Second, the fact that NDL has already declined to pay under the LOC hardly demonstrates the absence of irreparable harm, as this litigation again demonstrates, for BOI has continued its attempts to gain payment under it. It was not, therefore, an abuse of discretion for the district court to find that Brenntag faced the risk of irreparable harm in the absence of an injunction.

■ BOI next contests the district court's finding that Brenntag had established a likelihood of successfully prevailing on the merits, arguing that: (i) merits aside, equitable relief is not warranted in this instance, and (ii) the court erred in finding that BOI was not a "holder in due course" of the documents under the LOC.

■ Although courts should rarely interfere with executory letter-of-credit transactions, *see KMW Int'l v. Chase Manhattan Bank,* 606 F.2d 10, 16 (2d Cir. 1979); *United Bank Ltd. v. Cambridge Sporting Goods Corp.,* 41 N.Y.2d 254, 392 N.Y.S.2d 265, 360 N.E.2d 943, 948 (N.Y. 1976); *Sztejn v. J. Henry Schroder Banking Corp.,* 177 Misc. 719, 721, 31 N.Y.S.2d 631 (N.Y.Sup.Ct.1941), an issuer may refuse to honor a LOC, and a court may enjoin payment in the narrow circumstances "where 'fraud in the transaction' has been shown and the holder has not taken the draft in circumstances that would make it a holder in due course." *United Bank,* 360 N.E.2d at 948; *see also KMW,* 606 F.2d at 16; *Sztejn,* 177 Misc. at 721, 31 N.Y.S.2d 631 ("[A]pplication of [the anti-injunction] doctrine presupposes that the documents accompanying the draft are genuine and conform in terms to the requirements of the letter of credit."). However, the fraud must be actual, not anticipated. *See American Bell Int'l, Inc. v.*

*Islamic Republic of Iran,* 474 F.Supp. 420, 425 (S.D.N.Y.1979).

 The district court's holding that Brenntag had established a likelihood of success on the merits is easily supportable. The LOC at issue was a stand-by, not a documentary, letter. A stand-by letter of credit is meant to be drawn upon only in the event that its applicant fails to make a direct payment to the beneficiary, while a documentary letter is payable upon simple presentation of, *inter alia,* shipping documents. For this reason, to collect upon a stand-by LOC, the beneficiary or, as here, the negotiator bank must present to the issuing bank a "default letter" stating that the debt had not been satisfied as of a specified date. *See Apex Oil Co. v. Archem Co.,* 770 F.2d 1353, 1355–56 (5th Cir.1985).

It is undisputed that BOI sought and received an undated default letter when it advanced funds to Petro against Petro's interest in the LOC. At that time, the letter was obviously noncompliant with the LOC's requirements for collection and misrepresented material facts, in that the default it purported to certify had not and could not have occurred at the time that the letter was written. *See Brenntag,* 9 F.Supp.2d at 335–36 (noting BOI Officer's admissions). Moreover, it is undisputed that the goods whose purchase the LOC was intended to support were never shipped. Banerjee admitted to instructing BOI's billing clerk to stamp March 14, 1997, on the default letter even though he had no authority to take this action and no reason to believe the letter was warranted or accurate. He also admitted to knowing that the letter could not then have been valid, because its signatories did not work for Petro as of that date and BOI had been advised that Prasad was no longer authorized to sign documents on Petro's behalf. *See id.* at 335–37, 340. Finally, Raghavan testified that Banerjee had repeatedly requested Petro to deliver a fresh default letter despite having been informed by Raghavan that there had been no default

and that any demand for payment under the LOC would therefore be improper. *See id.* at 339–40. Banerjee admitted to making these requests, although he denied other aspects of Raghavan's testimony. *See id.* at 340. After BOI initially attempted to collect from NDL under the LOC, Ashok's attorney sent a letter to BOI instructing it to withdraw its "unauthorized and wrongfully lodged" claim and noting that Petro "did not issue you a claim/default letter as requested by you during the week of March 10–14, 1997 and . . . you had specifically been asked not to negotiate the abovementioned Letter of Credit." *Id.* at 341 (quoting letter).

In light of the foregoing, it was hardly an abuse of discretion for the district court to conclude that Brenntag was likely to prevail on the merits of its claim. The evidence strongly supports the proposition that the documents that BOI presented in demanding payment under the LOC were known by BOI to be noncompliant. The default letter was not dated by Petro and was signed by someone who was not an authorized signatory of Petro at the relevant time. The evidence also indicates that BOI knew that these documents were noncompliant and materially inaccurate at the time it obtained them, knew that they remained false and fraudulent at the time it sought to collect upon them, and actually took positive steps in furtherance of an attempted fraud by requesting Petro to issue a new default letter, and, failing in that, by date-stamping the undated and long-held original default letter. For these reasons, there was ample reason for the district court to conclude that BOI was not entitled to payment from NDL and was not a holder in due course. This conclusion, and the irreparable harm finding, was sufficient to justify the issuance of an injunction. *See United Bank,* 360 N.E.2d at 948 ("[W]here 'fraud in the transaction' has been shown and the holder has not taken the draft in circumstances that would make it a holder in due course, the customer may apply to enjoin the is-

suer from applying drafts drawn under the letter of credit."); *KMW*, 606 F.2d at 16 (noting authority for enjoining payment under a letter of credit "when the documentation presented is fraudulent or there is 'fraud in the transaction.'"); *American Bell*, 474 F.Supp. at 425 (injunction improper where no fraud had been shown).

■ BOI's final argument is that the FSIA bars the issuance of an injunction. The FSIA provides in pertinent part that the property of foreign sovereigns shall generally be "immune from attachment prior to the entry of judgment in any action brought in a court of the United States." 28 U.S.C. § 1610(d). The district court found that the FSIA did not bar the injunction in this case because BOI did not have a property interest under the LOC. The court reasoned that the facts that BOI did not validly negotiate the documents and was not a holder in due course demonstrated that it lacked such a property interest. It also noted that under New York law, beneficiaries do not have a property interest in executory letters of credit, though it declined to rest its holding on this point. BOI relies upon our decision in *S & S Machinery Co. v. Masinexportimport*, 706 F.2d 411 (2d Cir.1983), to argue that the FSIA bars the relief granted.

In *S & S Machinery*, the plaintiff financed the purchase of certain items from a Romanian state-owned trading company through the use of letters of credit payable to a Romanian state-owned bank for the account of the seller. Because the goods purchased were actually shipped, there was no allegation of fraud. However, when the goods turned out to be defective, S & S sought and received in state court an order attaching the assets of each defendant in the United States. After the defendant removed the action to federal court, the district court modified the order of attachment to include an injunction against the negotiation of drafts under the letters of credit. The defendant then moved for vacatur under the FSIA. The district court granted the motion, holding that each defendant was an instrumentality of the Romanian government within the meaning of the FSIA and their statutory protections had not been waived. *See id.* at 413. We affirmed, holding that "courts ... may not grant, by injunction, relief which they may not provide by attachment." *Id.* at 418.

The district court in this case found that *S & S Machinery* was inapposite. It noted that the instant case involved a demand for payment under an LOC that was denied for, *inter alia*, facial invalidity of the requisite documents. *See Brenntag*, 9 F.Supp.2d at 347. In *S & S Machinery*, by contrast, there was no dispute over the facial or substantive legality of the documents, the presentation of which would result in payment on the LOC, and, hence, "the parties did not dispute that the letters of credit were defendants' property at the time the attachment was granted." *Id.*

■ We agree with the district court that BOI does not have a property interest in this instance, although we do not rest our decision solely on the distinction between this case and *S & S Machinery*. Under New York law, an executory letter of credit is not the property of the beneficiary thereunder for purposes of attachment. *See Supreme Merchandise Co. v. Chemical Bank*, 70 N.Y.2d 344, 520 N.Y.S.2d 734, 514 N.E.2d 1358 (N.Y.1987); *Ferrostaal Metals Corp. v. S.S. Lash Pacifico*, 652 F.Supp. 420, 424–25 (S.D.N.Y. 1987); *Diakan Love v. Al–Haddad Bros. Enters., Inc.*, 584 F.Supp. 782, 784 (S.D.N.Y.1984). The reason for this rule is the policy against enjoining such transactions—because their role in the financing of commercial transactions supports the view that they ought rarely be interfered with. *See Supreme Merchandise*, 514 N.E.2d at 1361. Indeed, the rule against attaching a beneficiary's interest thereunder follows *a fortiori* from the general rule against enjoining such transactions, in that if fraud in the transaction is a necessary condition for an injunction, an attachment based on an antecedent debt is clearly

inappropriate. It is thus unclear whether the injunction at issue in *S & S* was appropriate as an initial matter, FSIA aside.

In any event, it is clear that under New York law, BOI would have no property interest in the LOC were it the beneficiary. Whether it might have a property interest as a holder in due course is an issue we need not resolve, given the strong evidentiary case that it was not such a holder. *Cf. First Commercial Bank v. Gotham Originals, Inc.*, 64 N.Y.2d 287, 486 N.Y.S.2d 715, 475 N.E.2d 1255, 1260 (N.Y.1985) (negotiating bank acquired rights " 'to the same extent as if it were named as beneficiary of the credit.' " (quoting H. Harfield, *Letters of Credit* 14)). Nor are we impressed with BOI's proffered distinction that, because BOI has attempted to collect upon the LOC, this case does not involve an "executory" letter and thus is not governed by the cited cases. The LOC is executory at least in the sense that it has neither been paid upon nor closed out—hence BOI's continuing efforts to seek payment. We see no reason why BOI's failed effort to collect under this LOC should confer upon it a property interest where it would not otherwise be deemed to have such an interest, and BOI has cited no pertinent authority to support this tenuous view.

 Finally, we see no merit in BOI's proffered distinction between the documents under the LOC and a more nebulous right to payment. The purpose of the FSIA was not to alter the substantive liability of foreign states with respect to their activities and property subject to the jurisdiction of the United States, but to remove the decision as to immunity in particular cases from the executive branch. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488–89, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Thus, the FSIA grants jurisdiction to federal courts to determine claims of foreign states to immunity and provides that:

> Under international law, states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned, and their commercial property may be levied upon for the satisfaction of judgments rendered against them in connection with their commercial activities.

28 U.S.C. § 1602 (findings and declaration of purpose); *see also Verlinden*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (FSIA codifies, as a matter of federal law, the restrictive theory of foreign sovereign immunity, under which immunity is confined to suits involving the foreign sovereign's public acts, and thus does not extend to cases arising out of its strictly commercial acts).

In furtherance of this distinction between public and commercial acts by foreign states, the FSIA provides a number of exceptions to sovereign immunity relating to the commercial activities and property of foreign states. *See* 28 U.S.C. § 1605. However, the FSIA provides that the property of foreign states used for commercial activities in the United States is generally immune from prejudgment attachment. *See* 28 U.S.C. § 1610(d). The reason for this limitation is to prevent the location of the property from conferring jurisdiction on the court—*i.e.*, to prevent *in rem* and *quasi-in-rem* actions from undermining the general principles codified in the FSIA. *See Geveke & Co. Int., Inc. v. Kompania Di Awa I Elektrisidat Di Korsou N.V.*, 482 F.Supp. 660, 663 (S.D.N.Y. 1979) (Weinfeld, J.).

In light of this statutory framework, we see no merit in BOI's proffered distinction. The district court reasonably concluded that BOI was not a holder in due course and had no property interest in the LOC. Moreover, New York law supports the view that BOI would have no property interest under this LOC even were it a beneficiary with valid documentation. *Cf. First Commercial Bank v. Gotham Originals, Inc.*, 475 N.E.2d at 1260. As BOI had no property interest in the LOC, its interest in the documents thereunder, *with*

*respect to the LOC,* is at best purely theoretical.

At oral argument, appellee's counsel conceded that BOI can take possession of the documents; all it is prohibited from doing is seeking payment under the LOC. This confirms the failure of BOI's suggested distinction between its interests in the documents under the LOC and in a right to payment thereunder. As the court's jurisdiction over the LOC and NDL is not in question, the relief afforded violates neither the letter nor spirit of the FSIA.

We have considered appellant's other arguments on appeal and find them to be without merit. Accordingly, we affirm.