CMRK, INC., Plaintiff,

v.

Michael D. MOONEY, Holy Trinity Community Church, Holy Trinity Community Centers, Defendants.

No. Civ.A. 01–40144–NMG.

United States District Court, D. Massachusetts.

Dec. 20, 2001.

Andrea Mobilia, Middleton, MA, for Plainitff.

Vincent F. O'Rourke, Jr., Thomas J. Conte, Bowditch & Dewey, Worcester, MA, Jon D. Berman, Berman, Russo & Sulick, South Windsor, CT, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

On July 17, 2001, plaintiff CMRK, Inc. ("CMRK") filed suit in Worcester Superior Court against defendants Michael D. Mooney ("Mooney"), Holy Trinity Community Church ("Church"), and Holy Trinity Community Centers ("Centers") for damages the plaintiff sustained as a result of the defendants' breach of contract. On August 1, 2001, the defendants removed the case to this Court.

This action arises under diversity jurisdiction. The plaintiff is a Massachusetts corporation with a principal place of business in Northborough, defendant Mooney is a resident of Connecticut, and defendant Centers is a Connecticut non-profit corporation. Church was formerly a Connecticut not-for-profit corporation, but as of 1999, it ceased operations.

CMRK seeks a preliminary injunction to enjoin the defendants from refusing to sell to CMRK the clothing collected from donation bins or from selling such clothing to other entities. Alternatively, pursuant to statements made at the motion hearing on December 7, 2001, the plaintiff seeks possession of the bins at their locations.

## I. Background

### A. The Oral Agreement

The present case involves a simple breach of contract claim. In 1996, Mooney, discussed with Fawez El Khoury ("Khoury"), an agent of the plaintiff, a possible arrangement whereby Mooney, through a charitable organization, would sell to the plaintiff the used clothing it collected. At their first meeting, Mooney purportedly asked the plaintiff to finance 90 bins for $110,000. Mooney and the plaintiff subsequently entered into an oral agreement whereby the plaintiff agreed to purchase bins and lease them to Mooney at "no cost". The plaintiff alleges that the parties also agreed that if Mooney stopped selling clothing to the plaintiff, it would own the bins at their locations and any assignable rights to those locations.

### B. The Written Agreement

In 1997, Mooney and his associates formed Holy Trinity Community Church, which operated both as a Church and a charitable organization. At that time, CMRK and Church executed a written agreement that allegedly memorialized the terms of their prior oral agreement. Pursuant to the provisions of that contract, Church agreed to sell *exclusively* to the plaintiff the clothes it collected in the bins

for 15 cents per pound with scheduled price increases over a five-year term. The contract also provided that the agreement could not be assigned without written consent. As part of its business relationship with Mooney and Church, the plaintiff also claims that it expended $186,136 for an additional 281 bins for Church, i.e. at $662 per bin.

### C. Holy Trinity Community Centers

In 1999, Church ceased operations in Connecticut, but Mooney, on behalf of Centers, an organization founded by Mooney, continued his relationship with the plaintiff. Centers was a Connecticut non-profit corporation that donated funds raised through the sale of used clothing to homeless shelters, soup kitchens and other local charities. The plaintiff alleges that it learned that Centers was to replace Church only when Mooney advised Khoury that he should make future payments to Centers rather than to Church.

Mooney contends that the written agreement between CMRK and Church terminated when Mooney disassociated himself with Church and it ceased operations. He also alleges that, with Khoury's permission, Centers took possession of the clothing bins provided by Khoury to Church.

The parties do not dispute that the price CMRK paid Centers for its clothing deliveries was reduced at some point in their business relationship, but they offer contradictory explanations to account for such reductions. On the one hand, Khoury contends that CMRK always paid Mooney 15 cents per pound, but that from a certain time forward, at Mooney's request, it paid Mooney directly the difference between the 15 cent contract price and the amount paid to Centers. Mooney, for his part, asserts that CMRK informed Centers that it would have to pay Centers less money because of depressed market conditions, but that its price reduction was temporary

and CMRK would credit the purchase price differential toward reimbursement for the bins so that Centers would gradually acquire ownership of them.

### D. Termination of the Relationship

On April 12, 2001, Mooney announced to Khoury that Centers would no longer sell its collected clothing to the plaintiff. Mooney asserts that he explained to Khoury that Centers could no longer do business with CMRK given the uncertainty of its price structure and the unfairness of the purchase terms, and that, with the requisite documentation, Centers would reimburse CMRK for the bins. Notably, CMRK's purchase price reductions, according to Mooney, amounted to over $400,000, placing in dispute whether Centers owes it anything for the bins.

Mooney resigned from Centers and formed New England Textiles Industries ("New England") on April 23, 2001. New England then entered into a contract with Centers to purchase its clothing at 15 cents per pound.

### II. Discussion

■ Under Fed.R.Civ.P. 65, a district court has broad discretionary power to grant or deny preliminary injunctions. In ruling on a motion for a preliminary injunction, this Court must consider whether CMRK has established that: 1) it has a substantial likelihood of success on the merits, 2) there exists, absent injunctive relief, a significant risk of irreparable harm to CMRK, 3) the balance of hardship tilts in its favor, and 4) granting the injunction will not negatively affect the public interest. *See e.g. Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir.1996); *TEC Engineering Corp. v. Budget Molders Supply Inc.*, 82 F.3d 542, 544 (1st Cir.1996).

## A. Likelihood of Success on the Merits

A court's conclusions with respect to the merits of the issues presented in a motion for preliminary injunction is a statement of "probable outcome". *See, e.g., Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 238 (1st Cir.1986) (en banc), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). The First Circuit Court of Appeals has indicated that, although the likelihood of success prong is "the critical factor in determining the propriety of injunctive relief", it still must be balanced against the other prongs to determine the appropriateness of equitable relief. *Lancor v. Lebanon Housing Authority*, 760 F.2d 361, 362 (1st Cir.1985); *Cohen v. Brown Univ.*, 991 F.2d 888 (1st Cir.1993).

An assessment of the likelihood of success assumes particular importance when the court determines that one party or the other will suffer some injury whichever course is taken on the preliminary injunction motion. *See* 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2948 (2001). In such a case, if the moving party presents only a weak case for success on the merits, a preliminary injunction is inappropriate unless that party demonstrates a high probability that he will be irreparably injured if the court fails to act. *Id.*

At this stage of the litigation, CMRK has *not* clearly demonstrated a likelihood of success on the merits of its claims that 1) its agreement with Centers justifies an usual affirmative injunction ordering Centers to resume sales and delivery of clothing or 2) it has a right to assume immediate ownership of the bins *at their locations*.

The parties dispute whether the agreement under which the plaintiff seeks relief is still operative or even applies to the parties to this suit. The written agreement between Church and CMRK was not, according to its terms, assignable without the prior written consent of the parties to the contract. Khoury offers no evidence of a written assignment. Rather, he asserts that the agreement between Church and CMRK evidences an agreement between Centers and CMRK. CMRK's argument is unconvincing and certainly inadequate to establish a likelihood of success because the agreement between Centers and CMRK was, at most, a putative oral agreement that mirrored the agreement between CMRK and Church.

Nor is it clear that CMRK has a right to the bins at their locations. Although the original agreement between CMRK and Church conferred upon CMRK the right to assume ownership over the bins in the event of a breach, it did not explicitly grant CMRK the additional right to take over the bins at their locations. Mooney, pursuant to an alleged price set-off initiated by CMRK, claims that he may already own the bins outright. CMRK again has not met its evidentiary burden.

## A. Irreparable Harm

Nor does the plaintiff present compelling evidence of irreparable harm. In the present case, the plaintiff asserts that its business will be harmed in the absence of injunctive relief because (1) Centers supplies almost 50% of its clothes and (2) it cannot meet the demands of its customers without purchasing clothes from Centers. Although a monetary injury usually does not rise to the level of irreparable harm, courts have held that under some circumstances the risk of insolvency may constitute irreparable harm. *See, e.g., Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245 (2d Cir.1999).

In the instant case, the plaintiff's bare averment that without injunctive relief, his

business will suffer does not support a sufficient claim of irreparable injury. Clothes purchased by the ton certainly lack any unique quality warranting specific performance pursuant to an affirmative injunction. CMRK can mitigate its losses by procurement of substitute goods and if the market commands a higher price, it can later recover the difference between the contract and the cover price if it prevails on the merits. M.G.L. c. 106 §§ 2–711, 2–712, 2–712(2), 2– 713, 2–715, 2–715(1).

### B.  The Balance of Hardships

 In considering the comparative hardships, the plaintiff has a weak case for injunctive relief. If this Court were to issue an injunction, Centers' charitable activities may well suffer given that it cannot feasibly operate at the purchase price offered by the plaintiff.

### C.  The Public Interest

The public interest is served by the work of non-profits. By way of illustration, Centers donated over $69,000 to community organizations and distributed over $80,000 in free clothes during 2000. In assessing the propriety of injunctive relief in the instant case, the public nature of the defendants' harm properly outweighs the purely private nature of plaintiff's harm.

### III. Conclusion

The issuance of injunctive relief, particularly one requiring the nonmoving party to take affirmative action, is warranted only when the moving party has proffered sufficient evidence. The plaintiff here has not demonstrated that equitable relief is warranted. Accordingly, its motion for a preliminary injunction will be denied.

### ORDER

For the reasons stated in the Memorandum above, CMRK's Motion for a Preliminary Injunction (Docket No. 2) is **DENIED.**

**So ordered.**